132 F.3d 71

**UNITED TRANSPORTATION UNION–ILLINOIS LEGISLATIVE BOARD, Petitioner,**

v.

**SURFACE TRANSPORTATION BOARD and United States of America, Respondents,**

**Association of American Railroads, Intervenor.**

No. 97–1027.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1997.

Decided Jan. 6, 1998.

Gordon P. MacDougall, Washington, DC, argued the cause and filed the briefs for petitioner.

Thomas J. Stilling, Attorney, Surface Transportation Board, argued the cause for respondents, with whom Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, John J. Powers, III, Washington, DC, and Robert J. Wiggers, Attorneys, Henri F. Rush, General Counsel, Surface Transportation Board, Ellen D. Hanson, Deputy General Counsel, Washington, DC, and Michael Martin, Trial Attorney, were on the brief. Craig M. Keats, Associate General Counsel, Washington, DC, entered an appearance.

Before: GINSBURG, SENTELLE, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The United Transportation Union–Illinois Legislative Board challenges a recently adopted rule of the Surface Transportation Board requiring parties that submit pleadings of 20 or more pages or computer-generated spreadsheets also submit a computer diskette containing the document. The UTU also objects to the STB's long-standing rules and policies regarding public access to transcripts and to pleadings and correspondence from docket files. We deny the UTU's petition because (1) the disk requirement is neither arbitrary and capricious nor unconstitutional, and (2) the UTU's other challenge is untimely under the Hobbs Act.

## I. Background

In the ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803, the Congress abolished the Interstate Commerce Commission, created the STB, and transferred some of the ICC's responsibilities to the STB. At the same time the Congress declared that the rail transportation policy of the United States is in part "to provide for the expeditious handling and resolution of all proceedings" before the STB. 49 U.S.C. § 10101(15). Accordingly, the Congress set time limits for the STB to decide certain types of proceedings, including exemption and revocation cases, *see id.* § 10502(b), and cases involving the reasonableness of a rate, *see id.* § 10704(c). In addition, the Congress specifically directed the STB to "establish procedures to ensure expeditious handling of challenges to the reasonableness of railroad rates." *Id.* § 10704(d).

In furtherance of these mandates the STB in March 1996 solicited comments upon how the procedural regulations it inherited from the ICC could be modified to expedite proceedings before the STB. *Expedited Procedures for Processing Rail Rate Reasonableness, Exemption and Revocation Proceedings (Advance Notice of Proposed Rulemaking)*, 61 Fed.Reg. 11,799, 11,799 (1996). After receiving comments the STB proposed, among other things, to amend 49 C.F.R. § 1104.3 by adding a requirement that parties submit three copies of IBM-compatible disks or QIC–80 tapes for "[t]extual submissions of 20 or more pages" (in WordPerfect 5.1 format) and "[a]ll electronic spreadsheets" (in LOTUS 1–2–3 release 5 or earlier format). *Expedited Procedures for Processing Rail Rate Reasonableness, Exemption and Revocation Proceedings (Notice of Proposed Rulemaking)*, 61 Fed.Reg. 39,110, 39,111 (1996). In the preamble to the NPRM, which was not published in the *Federal Register*, the STB explained that the disk requirement would "help [it] process cases more quickly" because the agency staff could "search documents electronically for particular issues or arguments." In response to the UTU's previously expressed concern about public access to the disks, the STB explained that "the information stored on computer diskettes is not the official record; the official record consists of the original paper documents filed with the Board, to which the public will have access."

In response to the NPRM the UTU again objected to the disk rule. The UTU claimed that the rule would impose a hardship upon railroad employees because they "do not prepare their pleadings on instruments capable of producing a diskette." The UTU also complained that the disks would not be available to the public because there was no proposal to put a computer terminal in the STB reading room. In response to the STB's statement that the public has access to the paper version of all pleadings, the UTU argued that "the public does not have equal access to filings with the agency" because transcripts are not available to the public, and pleadings and correspondence are not available to the public "on a timely basis."

In the (unpublished) preamble to its Final Rule document, *see* 61 Fed.Reg. 52,710 (1996), the STB said that it was adopting the disk rule because it would "simplif[y] the task of reviewing and analyzing voluminous records." The agency also pointed out, however, that any party upon whom the rule imposed a hardship "may seek a waiver in a particular case." In addition, the STB adopted the suggestion of the Association of American Railroads that each party be required to serve a copy of its disk upon all other parties, noting that "[t]his requirement also addresses UTU's suggestion that diskettes should be made available to other parties." Finally, the STB termed "baseless" the UTU's complaints regarding the public availability of transcripts and pleadings:

> [A]s provided by our regulations, transcripts are always available for inspection, although they cannot be copied, but rather must be purchased from the court reporter.... [A]fter being filed, pleadings are always available for inspection, either in paper form or on microfiche, from the Secretary's office.

The UTU petitioned for a stay and to reopen the rule, on the grounds that the disk rule would deprive railroad employees of the opportunity to participate in STB proceedings and that the STB had failed sufficiently

to justify the rule. The UTU argued that there was insufficient access to documents listed in the public docket and contended that the Board should provide a public computer terminal, as a corollary to the disk rule, in order to facilitate such access. The UTU also complained that the STB had changed its policy regarding transcripts and was no longer making them available to the public. Another commentator, the National Industrial Transportation League, also requested that the STB reopen the rulemaking, for its part on the ground that, because some rate-making cases involve hundreds of parties, service of disks should be required only when another party so requests, and then only "if possible."

In response to these petitions the STB stayed the effective date of the new rule, *see* 61 Fed.Reg. 57,339, and thereafter issued a modified Final Rule, *id.* at 58,490. In the preamble (again unpublished) the STB reiterated its belief that the rule is justified because it permits the agency staff to perform word searches. The STB rejected the UTU's argument that requesting a waiver would be impractical because the ruling would come after the due date for filing the pleading; the STB said it will rule upon a waiver request even after the due date. The STB also adopted the NITL's suggested modification requiring that any disk submitted to the Board "if possible, be provided to any other party requesting a copy."

The STB rejected the UTU's complaints regarding the public availability of transcripts, pleadings, and correspondence. The agency stated that although the microfilm version of a pleading may not be available for several weeks, the paper version is immediately available in the public docket room and it may be copied. The STB also indicated that its contract with the court reporter precludes it from making transcripts of agency proceedings available for copying. The STB noted that raw transcripts are available for inspection, although not for copying, and within days one may purchase a copy from the court reporter. Alternatively, one may make a copy once the final transcript is available on microfilm.

The UTU petitioned for review of the disk rule, and the AAR intervened in support of the STB.

## II. Analysis

The UTU argues that both the disk rule and the STB's policy regarding the public availability of transcripts, pleadings, and correspondence are arbitrary and capricious within the condemnation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). The UTU also contends that the disk rule denies it due process, in violation of the Fifth Amendment of the Constitution of the United States. We conclude that the disk rule is neither arbitrary and capricious nor unconstitutional. We also hold that the UTU's challenge to the Board's policies concerning public access to pleadings, transcripts, and correspondence is untimely under the Hobbs Act.

### A. The Disk Rule

■ The STB's disk rule is eminently reasonable. Requiring parties to submit lengthy pleadings and computer-generated spreadsheets on disks permits the STB staff to use a computer to search those documents for key information. The use of this widely available technology enhances the efficiency and effectiveness of the STB's operations. In addition, the rule permits any party to request a copy of any other party's disk, which will facilitate the participation of those who are most interested in a particular proceeding. Although the disk rule is more general in application, it also serves in part to comply with the directive of the Congress to "establish procedures to ensure expeditious handling of challenges to the reasonableness of railroad rates." 49 U.S.C. § 10704(d).

The disk rule is unlikely to impose a significant burden upon any party appearing before the STB. First, the paper version of every document, to which the public has ready access, remains the official version; the disk will contain no more information—and in some cases less—than the paper version. Therefore, an interested person who does not have a computer will still have access to the official record and to all the

information therein, as at present. Second, if submitting a disk does impose a hardship upon a party, then it may obtain a waiver of the rule. *See* 49 C.F.R. § 1110.9 (general waiver rule).

■ The UTU's objections to the disk rule are insubstantial. First, the UTU complains that the disks are unavailable to the public (and presumably to non-parties in particular): the STB has refused to provide a computer terminal so as to give the public access to the same technology as the agency staff; and access to the paper version alone is insufficient because it does not permit the public to perform the same searches as the STB staff. The UTU, however, can point to no legal requirement that an agency provide either the general public (or even just the parties appearing before it) with access to technology equal to that of the agency's staff. Because the STB permits public access to the paper documents, which include everything stored on the disks, its failure to provide public access to the disks themselves is not arbitrary and capricious.

■ Second, the UTU complains that the waiver rule denies due process to the union and to rail employees who do not have the necessary computer equipment or expertise to submit a disk to the Board in proceedings to which they are parties. The UTU contends that the due date for a pleading would generally pass before the STB could rule upon a request that it waive the disk rule. As noted above, however, the STB stated in the preamble to the modified final rule that if a party submits its waiver request along with the paper version of its pleading, then the STB will rule upon the request even after the due date. We do not doubt, therefore, that the availability of the waiver provision adequately protects a party for whom compliance with the rule would be burdensome.

■ Third, the UTU contends that the STB acted arbitrarily and capriciously when, upon reconsideration, it dropped the mandatory service requirement from the disk rule. According to the UTU only that requirement had "ameliorate[d] the unfairness" of the rule by making all disks available to all parties. The STB reasonably concluded, however,

that the mandatory service requirement would be unnecessarily "burdensome because in some proceedings there are hundreds of parties on the service list." Under the modified final rule, those parties that want a disk submitted by another party may request and if possible receive one.

Finally, the UTU claims that the disks should be available under the Freedom of Information Act. In response the STB directs our attention to the recently enacted Electronic Freedom of Information Act Amendments of 1996, Pub.L. No. 104–231, 110 Stat. 3049. The E–FOIA amended the definition of "record" in the FOIA to include a record maintained in "an electronic format," *id.* § 3, 110 Stat. at 3049 (codified at 5 U.S.C. § 552(f)(2)), and added a requirement that the agency make a record available to the public "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format," Pub.L. No. 104–231, § 5, 110 Stat. at 3050 (codified at 5 U.S.C. § 552(a)(3)(B)). Accordingly, counsel for the STB informed the court that the STB will, upon request, provide a copy of any disk for a standard fee and within the time limits prescribed by the FOIA. The UTU's argument that the disk rule violates the FOIA is therefore moot.

### B. Transcripts, Pleadings, and Correspondence

■ We do not reach the merits of the UTU's contention that the STB's rules and policies regarding the public availability of transcripts, pleadings, and correspondence are arbitrary and capricious. These rules and policies were carried over from the ICC and were not part of the rulemaking initiated by the STB. Accordingly, the UTU's challenge is untimely.

■ The Hobbs Act provides that "[a]ny party aggrieved by the final order [of an agency] may, within 60 days after its entry, file a petition to review the order in the court of appeals." 28 U.S.C. § 2344. The 60–day period of the Hobbs Act is "jurisdictional in nature, and may not be enlarged or altered by the courts." *NRDC v. Nuclear Regulatory Comm'n*, 666 F.2d 595, 602 (D.C.Cir.1981). This court has recognized an exception to

statutory limits on the time for seeking review, however, in circumstances where an agency reopens an issue explicitly or implicitly in the course of a subsequent rulemaking proceeding. *See, e.g., Kennecott Utah Copper Corp. v. U.S. Dep't of Interior,* 88 F.3d 1191, 1213 (D.C.Cir.1996). An agency does not "reopen" an issue, however, when in response to comments that are beyond the scope of the rulemaking it merely reaffirms its prior position.

> "The 'reopening' rule of *Ohio v. EPA* [838 F.2d 1325 (D.C.Cir.1988) ] is not a license for bootstrap procedures by which petitioners can comment on matters other than those actually at issue, goad an agency into a reply, and then sue on the grounds that the agency had re-opened the issue. To so read *Ohio v. EPA* would undermine congressional efforts to secure prompt and final review of agency decisions."

*Massachusetts v. ICC,* 893 F.2d 1368, 1372 (D.C.Cir.1990) (quoting *American Iron & Steel Inst. v. EPA,* 886 F.2d 390, 398 (D.C.Cir.1989)); *see also Kennecott Utah Copper,* 88 F.3d at 1213.

In the rulemaking under review the STB did not propose to make changes in the rules and policies governing public access to transcripts, pleadings, or correspondence. Nor did the agency request comments upon those rules and policies. As an initial matter, therefore, the UTU's challenge is untimely.

 Nor does the reopening doctrine save the UTU's claims, for the STB did not indicate, even implicitly, that it was reconsidering its policies governing public access to transcripts, pleadings, or correspondence. Those policies first surfaced when the UTU commented upon the observation in the preamble to the NPRM that all pleadings to be submitted on disk would also be available in paper form. The STB responded in the preamble to the Final Rule by referring to its existing regulations, which permit the public (1) to inspect pleadings, *see* 49 C.F.R. § 1001.1(d), and (2) both to inspect transcripts and to purchase them from the official reporter, *see id.* §§ 1001.1(d), 1002.1(h). The UTU reiterated its dissatisfaction in petitions to stay and to reopen the Final Rule. The STB responded again in the preamble to the modified Final Rule, this time by stating that the public may (1) copy pleadings, which are in the public docket file, and (2) inspect transcripts at the offices of the STB, purchase copies from the official reporter, or obtain copies from the STB once they are put on microfilm.

In both instances the STB's discussion of its policies and rules regarding public access to transcripts, pleadings, and correspondence came only in response to the UTU's unsolicited comments, and in each the Board merely reiterated its (and its predecessor's) longstanding policies. The UTU points to nothing in the record to suggest that the STB invited comments upon these rules or policies or that it reconsidered them. Insofar as the UTU claims that the STB has recently changed its policies regarding public access—which the agency denies—the Union does so in the wrong proceeding; in the petition for review now before the court the UTU challenged only the final rule concerning diskettes. Because the new rule did not alter the STB's rules or practices governing public access to transcripts, pleadings, or correspondence, the UTU's challenge to those policies is untimely under the Hobbs Act, 28 U.S.C. § 2344.

### III. Conclusion

We hold that the STB's new rule requiring parties to submit a computer disk containing pleadings of 20 pages or more and computer-generated spreadsheets is not arbitrary and capricious. We are without jurisdiction to address the UTU's claims concerning public access to transcripts, pleadings, and correspondence because they are untimely under the Hobbs Act. Accordingly, the petition for review is

*Denied.*