# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2193

_____

| | | |
|---|---|---|
| Nebraska State Legislative Board, United Transportation Union, | * * * | |
| Petitioner, | * * | |
| v. | * * | |
| Rodney Slater, Secretary of Transportation; United States Department of Transportation; Jolene Molitoris, Federal Railroad Administrator; Federal Railroad Administration, | * * * * * * | Petition for Review of an Order of the Federal Railroad Administration |
| Respondents. | * * | |
| Association of American Railroads, | * * | |
| Intervenor on Appeal. | * | |

_____

Submitted:  December 14, 2000

Filed:  April 2, 2001

_____

Before McMILLIAN and MURPHY, Circuit Judges, and BOGUE,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

The Nebraska State Legislative Board, United Transportation Union (UTU or the union) petitions for review of an order of the Federal Railroad Administration (FRA). We dismiss the petition for review for lack of jurisdiction.

**BACKGROUND**

In 1988, Congress enacted the Rail Safety Improvement Act, which required the Secretary of Transportation to establish a licensing or certification program for "any operator of a locomotive." 49 U.S.C. § 20135(a).[2] In December 1989, FRA, as the delegate of the Secretary, published proposed regulations implementing a certification program. The term "locomotive operator" was defined as "any person who moves a locomotive or group of locomotives regardless of whether they are coupled to other rolling equipment." 54 Fed. Reg. 50,890, 50,925 (Dec. 11, 1989). As relevant here, the FRA excluded from the definition: "(1) A person who moves a locomotive or group of locomotives within the confines of a locomotive repair or servicing area . . .; or (2) A person who moves a locomotive or group of locomotives for distances of less than 100 feet . . . for inspection or maintenance purposes." Id. In June 1991, FRA published the final regulation. 56 Fed. Reg. 28,228 (June 19, 1991) (codified at 42 C.F.R. § 240.7). After review of the comments, the only change FRA made to the proposed definition was to substitute the more familiar term "locomotive engineer" for the term "locomotive operator," explaining that the change did not affect the scope of the definition. Id. at 28,229.

In October 1992, UTU wrote FRA that the exclusions had eliminated union jobs at the Union Pacific (UP) Bailey Yard facility at North Platte, Nebraska. The union

---

[2]Prior to 1994, 49 U.S.C. § 20135(a) was codified at 45 U.S.C. § 431(i)(1). Because there were no substantive changes in the recodification and the parties cite to 49 U.S.C. § 20135(a), we will also do so.

also raised safety concerns about the subsection (1) exclusion, requesting review of the regulation and enforcement of the 100-foot limitation in subsection (2). After investigation of the facility, in November 1992, FRA notified the union that UP had not violated § 240.7 and that accident data did not support its safety concerns.

In July and August of 1994, UTU regional and local officials wrote FRA that UP's use of non-certified employees to move locomotives at Bailey Yard was unsafe. After investigation, by letters of November and December 1994, FRA informed the UTU officials that it found no violations of the regulation, noting UP had a training program for the non-certified employees.

In January 1996, UTU complained to FRA about UP's training program. After investigation, in July 1996 FRA notified the union that UP had not changed its training requirement and that it was in compliance with § 240.7. UTU requested reconsideration, asserting UP was not in compliance with subsection (1) of the regulation. On reconsideration, FRA again found no violation. UTU then sought a "final agency decision on this most important safety matter." In February 1997, the FRA Administrator upheld the decision and UTU did not petition for review.

On June 12, 1998, UTU wrote FRA that UP had breached a July 1997 agreement concerning the use of non-certified employees to move locomotives, asserting UP's practices violated the regulation and were unsafe. By letter of March 17, 2000, FRA notified UTU that investigation had revealed no regulatory violations or safety concerns and that the training of the non-certified employees was adequate.

**DISCUSSION**

Pursuant to the Hobbs Act, 28 U.S.C. § 2344, which requires a party aggrieved by an agency action to file a petition for review in the court of appeals within sixty days of a final order, on May 9, 2000, UTU petitioned this court for review of the March 17

letter. The sole issue presented was whether FRA had the statutory authority under 49 U.S.C. § 20135 to "exempt some operators of a locomotive from licensing and certification requirements." The Secretary argues that this court lacks jurisdiction to review the claim because UTU's petition for review is untimely.

UTU does not dispute that the "[t]imeliness of a petition seeking review . . . 'is a jurisdictional requirement that cannot be modified or waived by this court.'" Cosby v. Burlington Northern, Inc., 793 F.2d 210, 212 (8th Cir. 1986) (quoting Cartersville Elevator, Inc. v. ICC, 724 F.2d 668, 672 (8th Cir. 1984)). Relying on Tri-State Motor Transit Co. v. ICC, 739 F.2d 1373, 1375 n.2 (8th Cir.1984) (Tri-State), cert. denied, 472 U.S. 1027, 1032 (1985), UTU argues its petition is timely, even though it was not filed within sixty days of issuance of the regulation in 1991, because the petition was filed within sixty days of the March 17 letter and raises a substantive, not a procedural, challenge.

We agree with the Secretary that UTU's reliance on Tri-State is misplaced. It is true that in Tri-State this court held that "the Hobbs Act does not bar judicial review on the substantive validity of [a] rule, even if more than sixty days have elapsed since its issuance." Id. However, we explained "'administrative rules and regulations are capable of continuing application; limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity.'" Id. (quoting Texas v. United States, 730 F.2d 409, 415 (5th Cir. 1984), cert. denied, 472 U.S. 1032 (1985)). In other words, "the calendar does not run until the agency has decided a question in a manner that reasonably puts aggrieved parties on notice of the rule's content." RCA Global Communications, Inc. v. FCC, 758 F.2d 722, 730 (D.C. Cir. 1985). Here, as the Secretary argues, UTU had ample notice and opportunity to challenge the application of § 240.7 well before the March 17 letter. Indeed, pursuant to UTU's request for a "final agency decision" in the matter, the FRA Administrator issued a decision in February 1997 and UTU did not seek review. We

note that in its opening brief  UTU did not assert that the March 17 decision was factually incorrect or misapplied § 240.7.[3]

Apparently realizing the weakness of its Tri-State argument, UTU claims it is not challenging § 240.7, but only FRA's statutory authority to exempt certain employees from certification requirements.  However, UTU's request for relief belies its claim.  In its petition, UTU requests that this court order that only certified employees operate locomotives, which, if granted, would void the regulation.  In Cosby v. Burlington Northern, Inc, 793 F.2d at 211-12, we rejected a similar attempt to circumvent the sixty-day limitations period of the Hobbs Act.  In that case, we dismissed a petition as untimely because, despite the petitioners' characterization of their action, the requested relief would have required this court to reverse an agency order for which the limitations period of the Hobbs Act had expired.  Id.  We also note ICC v. Brotherhood of Locomotive Eng'rs, 482 U.S. 270, 281 (1987), in which the Supreme Court held that orders refusing clarification and reconsideration were nonreviewable and characterized motions requesting such orders as "devices"  by which a party could achieve perpetual review of an agency order in disregard of the Hobbs Act.  See also United Transp. Union-Illinois Legislative Bd. v. Surface Transp. Bd., 132 F.3d 71, 76 (D.C. Cir. 1998) (holding Hobbs Act barred review of agency position in response to unsolicited comments reaffirming prior position); Kennecott Utah Copper Corp. v. United States Dep't of the Interior, 88 F.3d 1191, 1213 (D.C. Cir. 1996) (holding statutory limitations period barred review of agency response to settled matter even if agency solicited comments on unsettled matter); Edison Elec. Inst. v. ICC, 969 F.2d 1221, 1228-29 (D.C. Cir. 1992) (rejecting petitioner's untimely challenge to agency's statutory

---

[3]In its reply brief, UTU attempts to raise factual issues concerning the March 17 letter.  However, "[c]laims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time on appeal in a reply brief."  Mahaney v. Warren County, 206 F.3d 770, 771 n.2 (8th Cir. 2000) (per curiam) (internal citation omitted). "We see no reason to depart from our rules in this case."  Id.

authority because application of rule did not apply to new circumstance). Moreover, contrary to UTU's assertion, the March 17, 2000, letter did not "permit" the use of non-certified employees to move locomotives at Bailey Yard. Rather, § 240.7 did so.

UTU's reliance on Leedom v. Kyne, 358 U.S. 184 (1958) (Kyne), is also misplaced. In Kyne, the Supreme Court held that a district court had jurisdiction to review a non-final agency order "made in excess of its delegated powers and contrary to a specific [statutory] prohibition." Id. at 188.[4] In addition to the fact that Kyne involved district court review, there are other differences between this case and Kyne. "[C]entral to [the Supreme Court's] decision in Kyne was the fact that[,]" in the absence of review, the agency's action "would wholly deprive the [plaintiff] of a meaningful and adequate means of vindicating its statutory rights." Board of Governors v. MCorp Fin., Inc., 502 U.S. 32, 43 (1991). In enacting § 240.7, FRA did nothing to deprive UTU of an opportunity to seek judicial review of the regulation. As discussed above, the union had "a meaningful and adequate opportunity for judicial review of the validity" of § 240.7, id., but failed to do so in a timely fashion.

Moreover, in Kyne, the agency action was "an attempted exercise of power that [Congress] had specifically withheld." 358 U.S. at 189. As a general rule, courts "have interpreted Kyne as sanctioning [review] in a very narrow situation in which there is a 'plain' violation of an unambiguous and mandatory provision of the statute." American Airlines, Inc. v. Herman, 176 F.3d 283, 293 (5th Cir. 1999). Thus, under Kyne, "review of an 'agency action allegedly in excess of authority must not simply involve a dispute over statutory interpretation.'" Id. (quoting Kirby Corp. v. Pena, 109 F.3d 258, 269 (5th Cir. 1997)). Nor will a mere allegation of ultra vires action suffice.

---

[4]In Leedom v. Kyne, 358 U.S. 184, 188 (1958), the National Labor Relations Board had included non-professional employees in a bargaining unit in violation of a clear and unambiguous statutory mandate requiring professional employees to vote on the inclusion of such employees.

West v. Bergland, 611 F.2d 710, 717, 720 (8th Cir. 1979) (Bergland), cert. denied, 449 U.S. 821 (1980). In Bergland, although an appellant had characterized his challenge to a regulation as an ultra vires one, we disagreed, holding it was merely one of statutory construction. Id. at 717. Such is also the case here. FRA's decision to exempt certain employees from certification "is by no means a clear departure from [the] statutory mandate or an abridgment of [UTU's] statutory right." Id. at 718 (internal quotations omitted).

In sum, in the circumstances of this case, permitting judicial review would thwart Congress's intent to "impart finality into the administrative process, thereby conserving administrative resources and protecting the reliance interests of those who might conform their conduct to the administrative regulations." Illinois Cent. Gulf R.R. v. ICC, 720 F.2d 958, 960 (7th Cir. 1983) (quoting Natural Res. Def. Council v. NRC, 666 F.2d 595, 602 (D.C. Cir. 1981)).

Accordingly, we dismiss UTU's petition for review for lack of jurisdiction.[5]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Despite the jurisdictional defect, FRA invites UTU to petition it to amend § 240.7 or seek revision through its advisory committee. Brief for Resp't at 30 n.10.