# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 5, 2016          Decided August 30, 2016

No. 15-1264

MAKO COMMUNICATIONS, LLC,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

FREE ACCESS & BROADCAST TELEMEDIA, LLC,
INTERVENOR

———

Consolidated with 15-1280

———

On Petitions for Review of Orders of
the Federal Communications Commission

———

*R. Scott Caulkins* argued the cause for petitioners. With him on the briefs were *Aaron P. Shainis*, *Lee J. Peltzman*, and *W. James Mac Naughton*.

*Jacob M. Lewis*, Associate General Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *William J. Baer*, Assistant Attorney General, U.S. Department of Justice,

*Robert J. Wiggers* and *Kristen C. Limarzi*, Attorneys, *Jonathan B. Sallet*, General Counsel, Federal Communications Commission, *David M. Gossett*, Deputy General Counsel, and *Thaila K. Sundaresan*, Counsel. *Robert B. Nicholson*, Attorney, U.S. Department of Justice, *Richard K. Welch*, Deputy Associate General Counsel, Federal Communications Commission, and *Scott M. Noveck*, Counsel, entered appearances.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

In 2012, Congress enacted the Spectrum Act. The Act responds to the rapidly growing demand for mobile broadband services by granting the Federal Communications Commission authority to reallocate a portion of the licensed airwaves from television broadcasters to mobile broadband providers. The Act contemplates the repurposing of licensed spectrum through a multi-step auction process. Broadcasters can offer to relinquish existing spectrum rights for a price, and other parties (including wireless providers) can bid to purchase the newly available spectrum. The Act also enables the Commission to make airwaves available by reassigning broadcasters to a smaller band of spectrum through a process called "repacking." This Court has upheld the Commission's rules for the auction and repacking process against a challenge brought by the television broadcast industry. *Nat'l Ass'n of Broad. v. FCC*, 789 F.3d 165 (D.C. Cir. 2015).

This case involves a further challenge to the Commission's implementation of the Spectrum Act brought by a particular species of broadcasters—low-power television (LPTV) stations. LPTV stations often serve areas not reached

3

by full-power broadcast stations and can carry niche programming catered to particular local communities. LPTV stations have always had secondary status relative to primary services such as full-power stations, meaning that, if an LPTV station's transmissions interfere with a primary service, the LPTV station must either eliminate the interference or cease operations.

In implementing the Spectrum Act, the Commission gave no protection to LPTV stations in connection with the reallocation of licensed spectrum as part of the auction and repacking process. The Commission understands the Spectrum Act to call for such protections only with regard to primary services, and in the Commission's view, extending those protections to LPTV stations would unduly impair the agency's ability to make an adequate amount of spectrum available for mobile broadband providers. The result is that many LPTV stations may be displaced or forced to shut down.

In this case, petitioners Mako Communications and Beach TV, on behalf of LPTV stations, challenge the Commission's denial of protections to LPTV stations in the auction and repacking process. According to petitioners, the Commission's actions in that regard violate the Spectrum Act. We deny the petitions for review and sustain the Commission's orders.

I.

The Spectrum Act, enacted as Title VI of the Middle Class Tax Relief and Job Creation Act of 2012, Pub. L. No. 112-96, 126 Stat. 156, responded to "the changing needs of American consumers," in particular, the "growing need for spectrum" for wireless networks. *Nat'l Ass'n of Broad.*, 789

F.3d at 168-69. The Act sets out a three-part process administered by the Federal Communications Commission to promote the reallocation of licensed spectrum from broadcast television to mobile broadband: (i) a reverse auction to determine the price at which television broadcasters would sell their spectrum rights; (ii) a repacking process in which the Commission reassigns television broadcasters who retain their spectrum rights to a smaller band of spectrum; and (iii) a forward auction in which other users including mobile broadband providers can bid for the newly available spectrum. *See id.* In 2014, the Commission adopted rules to implement the auction process. *See* In the Matter of Expanding the Economic & Innovation Opportunities of Spectrum Through Incentive Auctions, 29 FCC Rcd. 6567 (May 15, 2014) (the "Order").

This case principally involves the repacking process, and, in particular, the implications of that process for LPTV stations. The statutory framework governing the repacking process is set out in 47 U.S.C. § 1452. That provision grants the Commission general authority to "make such reassignments of television channels as the Commission considers appropriate" and to "reallocate such portions of such spectrum as the Commission determines are available for reallocation." 47 U.S.C. § 1452(b)(1). That general grant of repacking power to the Commission is subject to two statutory constraints.

First, under subsection (b)(2), the Commission must "make all reasonable efforts to preserve . . . the coverage area and population served of each broadcast television licensee." *Id.* § 1452(b)(2). The statute defines a "broadcast television licensee" fitting within the protections of that provision as a "full-power television station" or a "low-power television station that has been accorded primary status as a Class A

television licensee." *Id.* § 1401(6). LPTV stations lacking a Class A license and thus having secondary (rather than primary) status—i.e., the general category of LPTV stations— fall outside the definition of "broadcast television licensee." As a result, the Commission determined, "[p]rotection of LPTV . . . stations in the repacking process is not mandated by" subsection (b)(2). Order ¶ 238.

Unlike subsection (b)(2), the second statutory constraint on the Commission's repacking power expressly pertains to LPTV stations. That constraint, set out in subsection (b)(5), is the principal one at issue in this case. It states that "[n]othing in [Section 1452(b)] shall be construed to alter the spectrum usage rights of low-power television stations." 47 U.S.C. § 1452(b)(5). The Commission found that subsection (b)(5) does not compel according special protection to LPTV stations against displacement as part of the repacking process. The Commission explained that non-protection of LPTV stations "does not 'alter' their spectrum usage rights" within the meaning of subsection (b)(5). Order ¶ 239. Because LPTV "stations have always operated on a secondary basis with respect to primary licensees," they "have always operated in an environment where they could be displaced from their operating channel by a primary user and, if no new channel assignment is available, forced to go silent." Second Order on Reconsideration, 30 FCC Rcd. 6746, ¶ 68 (June 19, 2015) (the "Reconsideration Order").

In addition to determining that neither subsection (b)(2) nor subsection (b)(5) compelled it to protect LPTV stations in the repacking process, the Commission also declined to extend protection to LPTV stations as a matter of discretion. The Commission "recognize[d] the valuable services that many LPTV . . . stations provide." Order ¶ 237. But the Commission did "not believe that extending protection to

LPTV . . . stations in the repacking process would be consistent with the goals of the Spectrum Act." *Id.* ¶ 241. In the Commission's view, "[p]rotecting them would increase the number of constraints on the repacking process significantly, and severely limit [its] recovery of spectrum to carry out the forward auction, thereby frustrating the purposes of the Spectrum Act." *Id.*

The reduction in available spectrum associated with the reallocation of airwaves to wireless services is anticipated to have a substantial impact on the LPTV industry. Numerous LPTV stations thus brought petitions for reconsideration of the Commission's rulemaking, including Mako Communications and Beach TV Properties, the petitioners in this case. On reconsideration, the Commission affirmed its intent to exclude LPTV stations from protection in the repacking process (while also reiterating a commitment to mitigate the adverse impact on LPTV stations and other secondary licensees in a separate rulemaking). *See* Reconsideration Order ¶¶ 64, 67, 68, 72-76; *see also* Low Power Television Digital Rules, Proposed Rule, 81 Fed. Reg. 5086 (Feb. 1, 2016). Petitioners Mako and Beach TV each filed a petition for review of the Commission's orders in our Court. *See* 47 U.S.C. § 402(a); 28 U.S.C. §§ 2342(1), 2344. We consolidated their petitions.

Before addressing the merits of the arguments raised by petitioners, we briefly note a jurisdictional challenge raised by the Commission. The Commission contends that Mako's petition lies beyond our jurisdiction because Mako failed to challenge the Commission's Order (instead naming only the Commission's Reconsideration Order) in its original filings with this court. Although we generally lack jurisdiction over a petition challenging only an agency's denial of reconsideration, *see Sinclair Broad. Grp., Inc. v. FCC*, 284

F.3d 148, 156 (D.C. Cir. 2002), we undisputedly have jurisdiction over Beach TV's petition. Because Beach TV raises the same arguments as Mako, we can address the merits of the petitions based on our authority over Beach TV's petition alone, regardless of whether we would have jurisdiction over Mako's petition. *See Sec'y of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984); *accord Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *Ams. for Safe Access v. DEA*, 706 F.3d 438, 443 (D.C. Cir. 2013); *Comcast Corp. v. FCC*, 579 F.3d 1, 6 (D.C. Cir. 2009). We therefore proceed to the merits.

## II.

Petitioners argue that the Commission's implementation of the repacking process—in particular, the Commission's refusal to protect LPTV stations in that process—contravenes subsection (b)(5)'s prohibition against "alter[ing] the spectrum usage rights of low-power television stations." 47 U.S.C. § 1452(b)(5). We sustain the Commission's understanding and implementation of that provision.

We review the Commission's interpretation of the statute under the two-step *Chevron* framework. *See Nat'l Ass'n of Broad.*, 789 F.3d at 171 (citing *Northpoint Tech., Ltd. v. FCC,* 412 F.3d 145, 151 (D.C. Cir. 2005)). First, we consider whether Congress "has directly spoken to the precise question at issue," in which case we "give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). If "the statute is silent or ambiguous with respect to the specific issue," we then decide if the agency's interpretation is "a permissible construction of the statute." *Id.* at 843. "A 'reasonable' explanation of how an agency's interpretation serves the statute's objectives is the stuff of which a

'permissible' construction is made." *Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 151 (D.C. Cir. 2005) (citing *Chevron*, 467 U.S. at 863).

The pertinent statutory language bars the Commission from implementing its statutory repacking authority in a manner that would "alter the spectrum usage rights of low-power television stations." 47 U.S.C. § 1452(b)(5). According to petitioners, that provision unambiguously compels the conclusion at *Chevron* step one that LPTV stations must be protected against displacement in the repacking process. Petitioners' reading of the statute is incorrect.

In order to assess whether the repacking process envisioned by the Commission's orders could "alter" LPTV stations' "spectrum usage rights," we must initially identify the nature of those spectrum usage rights in the first place (before any purported alteration). Since their inception as a category in 1982, LPTV stations have been accorded secondary status. That status means that LPTV stations have always been subject to displacement by primary services such as full-power broadcast stations. LPTV stations cannot cause interference to (and must accept interference from) primary services. *See* Order ¶ 239. LPTV stations' "secondary status" therefore has always "pose[d] the possibility that they might be required to alter facilities or cease operation at any time." An Inquiry Into the Future Role of Low Power Television Broadcasting & Television Translators in the National Telecommunications System, 47 Fed. Reg. 21468, 21489 ¶ 95 (May 18, 1982).

Petitioners do not dispute that LPTV stations have had a secondary status relative to—and thus have been subject to displacement by—primary services such as full-power

television licensees. According to petitioners, however, LPTV stations did not have secondary status vis-à-vis *wireless* service providers before the Spectrum Act. As a result, petitioners contend, allowing for the displacement of LPTV stations' spectrum in favor of wireless providers would run afoul of subsection (b)(5)'s prohibition against conducting the repacking process in a manner that would "alter" LPTV stations' spectrum usage rights.

We need not address whether petitioners are correct in assuming that subsection (b)(5) would stand in the way of the Commission's adding new services to the category of primary services to which LPTV stations are subordinate in priority. Even assuming subsection (b)(5) essentially froze in place the roster of primary services in effect at the time of the Spectrum Act's enactment, LPTV stations had been subject to displacement by wireless licensees long before the Spectrum Act. *See* Order ¶ 239 n.741. LPTV stations' subordination to wireless services had been made explicit by at least 2004, when the Commission reallocated a different portion of the spectrum from primary broadcast providers to wireless providers. In its Digital LPTV Order promulgated that year, the Commission adopted procedures under which an LPTV station could be notified of its displacement by a "primary" wireless service provider. *See* In the Matter of Amendment of Parts 73 & 74 of the Commission's Rules to Establish Rules for Digital Low Power Television, Television Translator, & Television Booster Stations & to Amend Rules for Digital Class A Stations, 19 FCC Rcd. 19,331, ¶¶ 72-73 (2004); 47 C.F.R. § 74.703.

Petitioners claim, however, that the Commission's orders under the Spectrum Act materially differ from the Commission's Digital LPTV Order, under which LPTV stations could remain on vacated channels as secondary

licensees. Under the challenged orders, petitioners contend, LPTV stations instead are removed completely from the reallocated spectrum. Petitioners' understanding is incorrect. As was the case under the Digital LPTV Order, LPTV stations can still remain on cleared spectrum until a wireless provider actually displaces them. *See, e.g.*, Order ¶¶ 668-671. Thus, contrary to petitioners' claims, the challenged orders subordinate LPTV stations to wireless licensees in the same way the Commission had done before the Spectrum Act. We therefore reject petitioners' contention that the terms of subsection (b)(5) unambiguously compel protecting LPTV stations from displacement in the repacking process called for by the Act.

Proceeding to *Chevron* step two, we ask whether the Commission offered a "'reasonable' explanation of how [its] interpretation serves the [Act]'s objectives." *Northpoint Tech., Ltd.*, 412 F.3d at 151 (citing *Chevron*, 467 U.S. at 863). The challenged orders meet that standard. There are approximately 1,900 licensed LPTV stations. The Commission reasonably declined to protect LPTV stations from displacement in the repacking process because doing so would "severely limit . . . recovery of spectrum to carry out the forward auction, thereby frustrating the purposes of the Spectrum Act." Order ¶ 241. In *National Ass'n of Broadcasters*, we rejected the argument that the Commission was required to protect one type of low-power station (known as a "fill-in translator" because it fills gaps in the geographic coverage of a full-power station). *See Nat'l Ass'n of Broad.*, 789 F.3d at 179. We explained that the Commission permissibly declined to protect fill-in translator stations so as to avoid significantly impairing the agency's flexibility in the repacking process. *Id.* at 180. That is essentially the same explanation given by the Commission in the orders under

review in this case, and we see no reason for any different result here.

Petitioners argue that the Commission's understanding of subsection (b)(5) nonetheless is unreasonable because it renders the provision entirely meaningless. Petitioners are mistaken. As a general matter, LPTV stations' secondary status renders them subject to displacement insofar as they cause interference to primary services. *See* Order ¶¶ 239-240 & n.745. Subsection (b)(5)'s prohibition against conducting the repacking process in a manner that would "alter" LPTV stations' spectrum usage rights therefore has the effect of making clear that, as was the case before the Spectrum Act, the Commission's repacking authority does not enable it to displace LPTV stations even if they cause no interference to primary services. For that reason, the Commission's understanding of subsection (b)(5) does not leave the provision without any effect. We therefore conclude that the Commission's treatment of LPTV stations in the challenged orders rests on a reasonable understanding of subsection (b)(5) for purposes of *Chevron* step two, and we reject petitioners' arbitrary-and-capricious arguments to the same effect. *See Nat'l Ass'n of Broad.*, 789 F.3d at 176 (citing *Gen. Instrument Corp. v. FCC*, 213 F.3d 724, 732 (D.C. Cir. 2000)).

We finally (and briefly) take up, and reject, a distinct procedural challenge raised by petitioners. According to petitioners, the Commission's orders are inconsistent with Section 312 of the Communications Act, 47 U.S.C. § 312, which grants certain procedural protections set forth in Section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558(c), to a licensee whose license is "revoke[d]." Both the Communications Act and the APA describe the revocation of a license as an intentional sanction against the license holder,

*see, e.g.*, 47 U.S.C. § 312; 5 U.S.C. § 558, a description that does not—or at least does not have to—apply to the displacement of an LPTV station in the repacking process. As the Commission explained, "[d]isplacement does not 'revoke' LPTV . . . licenses for purposes of section 312 of the Act because it does not require termination of operations or relinquishment of spectrum usage rights; displacement requires only that LPTV . . . stations vacate the channel on which they are operating." Reconsideration Order ¶ 69. Indeed, LPTV stations "may be displaced by primary services at any time," *id.*, not just during the repacking process, and Section 312 normally has no bearing on such displacements, *see, e.g.*, 47 C.F.R. § 74.703. Petitioners give no basis for treating the potential displacement of LPTV stations in the repacking process any differently.

\* \* \* \* \*

For the foregoing reasons, we deny the petitions for review.

*So ordered.*