# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 16, 2017          Decided August 1, 2017

No. 16-1100

FREE ACCESS & BROADCAST TELEMEDIA, LLC, ET AL.,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

———

On Petition for Review of Orders of
the Federal Communications Commission

———

*Glenn B. Manishin* argued the cause for petitioners. With him on the briefs were *A. Wray Fitch III*, *George R. Grange II*, and *Robert Olender*. *Adam J. White* entered an appearance.

*William J. Scher*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, U.S. Department of Justice, *Howard J. Symons*, General Counsel at the time the brief was filed, *David M. Gossett*, Deputy General Counsel, and *Jacob M. Lewis*, Associate General Counsel. *Richard K. Welch*, Deputy Associate General Counsel, and *Thaila Sundaresan*, Counsel, Federal Communications Commission, entered appearances.

Before: HENDERSON, GRIFFITH, and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In 2014, the Federal Communications Commission adopted procedures for an auction designed to make more room on the electromagnetic spectrum for mobile broadband (wireless network) providers. In an earlier decision, we upheld the 2014 order creating these procedures. Petitioners now attack two related but more recent orders, but their challenges are barred to the extent that they target decisions that were made in the 2014 order and never since revisited. We may consider only petitioners' claim that one of the two later orders was irrational or devoid of substantial supporting evidence—a challenge we must reject.

I

The Spectrum Act of 2012 authorizes the FCC to conduct an auction to give mobile broadband services access to parts of the electromagnetic spectrum currently occupied by broadcast television stations. 47 U.S.C. § 309(j)(8)(G)(i); *see Mako Commc'ns, LLC v. FCC*, 835 F.3d 146, 147 (D.C. Cir. 2016). In particular, the Spectrum Act allows the Commission to crowd television broadcasters into "a smaller band of spectrum" (or "repack" them, in the Commission's argot), *Mako*, 835 F.3d at 147; *see* 47 U.S.C. § 1452, and then to let mobile broadband services make bids for the freed-up bandwidth. The Spectrum Act empowers the Commission to use repacking for a second and closely related purpose as well: to curb interference between licensed users by separating their allotments of spectrum with "guard bands"—which are portions of the bandwidth kept free of any licensed use. 47 U.S.C. § 1454(a), (b).

This case is about the rights in the repacking process of low-power television (LPTV) stations, which tend to "serve areas not reached by full-power broadcast stations" and offer "niche programming catered to particular communities." *Mako*, 835 F.3d at 148. The Spectrum Act protects LPTV stations by guaranteeing that "nothing" in its provisions authorizing the FCC to conduct repacking "shall be construed to alter" their "spectrum usage rights." 47 U.S.C. § 1452(b)(5). That is, the Commission may not use a spectrum auction to deprive LPTV stations of rights they had before the auction and repacking. But those rights were limited to begin with. In light of their smaller coverage, these stations have generally been assigned "secondary status relative to primary services such as full-power stations," meaning that under Commission regulations, "if an LPTV station's transmissions interfere with a primary service, the LPTV station must either eliminate the interference or cease operations." *Mako*, 835 F.3d at 147-48.

Here several LPTV stations contend that the Commission has nonetheless shrunk their usage rights, and acted arbitrarily and even unconstitutionally, in two recent orders specifying various details of the repacking process: what are known as the Commencing Operations Order, 30 FCC Rcd. 12,025 (Oct. 22, 2015), and the Channel-Sharing Order, 30 FCC Rcd. 14,927 (Dec. 17, 2015). In attacking these orders, petitioners challenge the legality of three policy choices in particular:

- the Commission's decision to force LPTV stations to reduce or cease operations upon receiving notice from a new licensed user that it is about to "commence operations" where "there is a likelihood of receiving harmful interference from" the LPTV stations in question, 29 FCC Rcd. 6567, 6840, ¶ 668 (May 15, 2014) (Auction Order);

- the Commission's decision to allow unlicensed entities to make use of the guard bands it has created, *id.* at 6685-86, ¶¶ 271-73, even though these bands remain (by definition) off-limits to licensed users like LPTV stations, *id.* at 6684, ¶ 270; and
- the Commission's refusal to guarantee that LPTV stations licensed to use portions of bandwidth (*i.e.*, channels) *before* a spectrum auction would have somewhere to land—some channel they could use—after the repacking, *see id.* at 6673-74, ¶¶ 237-41.

Yet these three decisions were not adopted in the orders on review here. As the citations above make clear, they were adopted instead in the Commission's 2014 Auction Order, which established general procedures for the auction and repacking process. By contrast, the Commencing Operations Order and Channel-Sharing Order were issued the following year, and neither revisited any of the Auction Order's decisions: the first simply defined when a new licensee would be viewed as "commencing operations" under the Auction Order, and the second sought only to soften the Auction Order's blow to LPTV stations by allowing them to share channels left available after the auction. In other words, neither of these more recent rulemakings put the Auction Order's earlier decisions back on the table. Each simply added to the Auction Order's settled framework while expressly refusing to reopen consideration of that framework. *See* Commencing Operations Order ¶ 21 & n.75 ("We reject as untimely requests for reconsideration of several commenters that we modify the transition procedures established in the [Auction Order]."); Channel-Sharing Order ¶ 64 & n.194 ("A number of commenters ask that we revisit matters that were resolved in the [Auction Order] . . . . We deny these requests . . . .").

So petitioners' real objection is to the Auction Order, which we already sustained against their similar challenges in *Mako*. 835 F.3d at 152. Fresh challenges to the Auction Order would now be time-barred. *See* 28 U.S.C. § 2344 (requiring parties aggrieved by an FCC order to petition for review "within 60 days after [the order's] entry").[1] That is why petitioners now ask us to vacate instead the Commencing Operations and Channel-Sharing Orders. But petitioners' challenge to these two orders is *also* barred since (again) both merely declined to reconsider the Auction Order's allegedly objectionable decisions, and we will not review refusals to reconsider matters settled in an earlier order to which direct challenges would now be time-barred. *See, e.g.*, *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1213 (D.C. Cir. 1996). Thus, insofar as petitioners challenge rules for the repacking process that originated with the Auction Order, their challenges are barred.[2]

---

[1] Though we have previously described this deadline as jurisdictional, *see, e.g.*, *United Transp. Union-Ill. Legislative Bd. v. Surface Transp. Bd.*, 132 F.3d 71, 75 (D.C. Cir. 1998), the relevant statute does not—and the Supreme Court has told us to treat such statutory limits as non-jurisdictional unless Congress clearly says otherwise, *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013). Indeed, the Court has held that "filing deadlines" in particular "ordinarily are not jurisdictional." *Id.* at 825. This suggests that the 60-day filing deadline on challenges to FCC orders is not jurisdictional after all. But here we needn't resolve this apparent tension between our earlier cases and later Supreme Court precedent.

[2] We needn't and therefore don't address the FCC's separate argument that these challenges are barred because petitioners are not "parties aggrieved" by the Commencing Operations Order, as required by the Hobbs Act. *See* 28 U.S.C. § 2344; *Simmons v. ICC*, 716 F.2d 40, 42-43 (D.C. Cir. 1983).

II

We now turn to two challenges specific to the Channel-Sharing Order. The first contends that this order was arbitrary and capricious or devoid of substantial supporting evidence. As a general matter, agencies must "examine the relevant data and articulate a satisfactory explanation for" their actions. *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here petitioners say there is no support for the Commission's view that letting LPTV stations share channels after the auction would meet the Order's stated goal of "mitigat[ing] the impact of the auction and repacking process" on LPTV stations. Channel-Sharing Order, 30 FCC Rcd. at 14,929.

But the Order is neither arbitrary nor unfounded. It sets only modest goals and adopts means that common sense tells us will advance those goals. After all, the Commission has been clear all along that its auction and repacking procedures may force some LPTV stations off the air entirely; indeed, we held in *Mako* that this result was legally permissible. 835 F.3d at 152. Likewise, the Channel-Sharing Order itself admits that "channel-sharing may not be right for all [LPTV] stations"; what nonetheless "justifies" the order, the FCC goes on to say, is the mere "possibility" of helping some such stations avoid extinction. Channel-Sharing Order, 30 FCC Rcd. at 14,939.

Petitioners ultimately concede that the Channel-Sharing Order has a more modest goal than that of rescuing every LPTV stations from displacement, but they still fault the Commission for not *quantifying* the Order's projected benefits based on empirical evidence. This objection misfires. The Commission did not need to rely on data to prove that giving LPTV stations something is better than giving them nothing. It was enough for the Commission to observe that channel-

sharing would help some LPTV stations by enabling them to survive the repacking process and save money by sharing costs. *Id.* at 14,938-39. The Commission was surely right that letting some LPTV stations share channels after the auction would be better than offering them no assistance at all. In short, the Channel-Sharing Order's goals are not so divorced from its means as to make the order irrational.

We lack jurisdiction over petitioners' final claim against the Channel-Sharing Order: that it flouts the Regulatory Flexibility Act, which tells agencies issuing certain rules to "prepare a final regulatory flexibility analysis" measuring the impact of the new rules on small businesses. 5 U.S.C. § 604(a). When a party seeking judicial review of a Commission order "relies on questions of fact or law upon which the Commission . . . has been afforded no opportunity to pass," the challenging party must first ask the Commission to reconsider the order at issue. 47 U.S.C. § 405(a); *see U. S. Telecom Ass'n v. FCC*, 825 F.3d 674, 701 (D.C. Cir. 2016) (finding no jurisdiction to review regulatory flexibility analysis where petitioner failed to challenge that analysis in a petition for reconsideration). Here petitioners never asked the FCC to reconsider the Channel-Sharing Order, so we have no authority to review its regulatory flexibility analysis.

## III

In 2014, the Commission made decisions that threatened to drive petitioners off the air—decisions that petitioners understandably tried to challenge. But the law does not leave them free to keep trying. The window for challenging the Auction Order shut 60 days after that order was entered, and it will stay shut unless cracked open again by the Commission itself. This petition for review flies beak-first into that hard limit insofar as it aims to re-litigate the Auction Order's

procedures. And we lack jurisdiction over petitioners' challenge to the Channel-Sharing Order's regulatory flexibility analysis, while the one challenge specific to the Channel-Sharing Order that we *can* consider today is meritless.

This petition for review of the Commencing Operations and Channel-Sharing Orders is dismissed in part and denied in part.

*So ordered.*