AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 32, AFL–CIO, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

Nos. 86–1447, 86–1642.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1987.

Decided Aug. 16, 1988.

Phillip R. Kete with whom Anne Wagner and Mark D. Roth, Washington D.C., were on the joint brief for American Federation of Government Employees, Local 32, AFL–CIO, petitioner in No. 86–1447 and AFGE, AFL–CIO HUD Council 122, petitioner in No. 86–1642.

Thomas J. Spangler with whom Louis G. Williams, H. Stephan Gordon and Patrick J. Riley, Washington, D.C., were on the joint brief for NTEU, petitioner in No. 86–1488 and NFFE, petitioner in No. 86–1495.

Ruth E. Peters, Solicitor, FLRA, with whom William E. Persina, Deputy Solicitor, FLRA, Arthur A. Horowitz, Associate Counsel, and Elsa D. Newman, Attorney, FLRA, Washington, D.C., were on the brief for respondent.

Before RUTH BADER GINSBURG, WILLIAMS and McGOWAN,* Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

In these four consolidated cases, union locals representing federal employees have petitioned for review of Federal Labor Relations Authority (FLRA or Authority) decisions declaring particular union proposals beyond the employer-agency's duty to bargain under the Federal Service Labor–Management Relations Act, 5 U.S.C. §§ 7101 *et seq.* (FSLMRA). Specifically, the unions contest the FLRA's analysis and conclusions concerning union proposals that would define an agency's "competitive area" and thereby determine which employees would compete with each other for job retention when an agency administers a reduction-in-force (RIF).

Two of these cases are before the court for a second time; all four cases involve the same central issue. In a prior opinion, the court directed the Authority to explain its apparent departure from its own precedent and from that of private sector labor cases when it concluded that the agencies need not bargain over the proposals. *Local 32, Am. Fed'n of Gov't Employees, AFL–CIO v. FLRA,* 774 F.2d 498 (D.C.Cir. 1985) (*Local 32* ). In its most recent decisions, *e.g., American Fed'n of Gov't Employees, Local 32, AFL–CIO and Office of Personnel Management,* 22 FLRA No. 49 (1986) (*Local 32 II* ), the FLRA has articu-

---

* Judge McGowan was a member of the panel but did not participate in the composition of this opinion.

lated an approach that purports to resolve the difficulties we identified. The Authority's approach, however, fails to satisfy our earlier mandate. We therefore grant the petition for review and remand these cases to the FLRA with a renewed instruction to reconcile its inconsistent decisions and set forth its analysis "candidly and in a manner that persons affected by the Authority's decisions can comprehend." *Local 32*, 774 F.2d at 506.

## I.

In the lexicon of federal labor relations, a competitive area is simply a grouping of employees within an agency, according to their geographical or organizational location, who compete for job retention when a particular position is abolished or some other adverse action constituting a RIF is imposed.[1] In such circumstances, an employee holding the affected position may be able to prevail over less senior or less qualified employees who hold different positions but are within the same competitive area.[2] The importance of the competitive area to job retention understandably has led the federal employee unions to demand a voice in how that area is defined.

We confront in the four cases consolidated here several union-proposed competitive area definitions. In No. 86–1447, Local 32 of the American Federation of Government Employees (AFGE) proposed to the Office of Personnel Management that the competitive area "shall be the Washington Metropolitan Area." *Local 32*, 774 F.2d at 500 & n. 1, *on remand, American Fed'n of Gov't Employees, Local 32, AFL–CIO and Office of Personnel Management*, 22 FLRA No. 49 (July 9, 1986) (*Local 32 II*). In No.

86–1495, Local 29 of the National Federation of Federal Employees proposed to the Army Corps of Engineers that the competitive area be

the geographic area that usually constitutes one area for employment purposes. It includes any population center (or two or more neighboring ones) and the surrounding localities in which people live and can reasonably be expected to travel back and forth daily in their usual employment.

*Local 32*, 774 F.2d at 501, *on remand, National Fed'n of Fed. Employees, Local 29 and Dep't of the Army, U.S. Army Corps of Engineers, Kansas City Dist.*, 22 FLRA 692 (1986). In No. 85–1749, the National Treasury Employees Union proposed that the Nuclear Regulatory Commission accept the "commuting area as the area of competition" and use "normal personnel considerations . . . in determining the similarity of positions." *National Treasury Employees Union and Nuclear Regulatory Comm'n*, 22 FLRA 707 (1986) (*NRC*). Finally, in No. 86–1642, HUD Council 22 of the AFGE, in negotiations with the Department of Housing and Urban Development, made two distinct proposals:

*Competitive Areas Proposal 1.*

The competitive area for reductions in force shall be determined by negotiation on a case-by-case basis according to management needs.

*Competitive Areas Proposal 2.*

Headquarters. The competitive area for headquarters is the commuting area, headquarters wide.

*American Fed'n of Gov't Employees, AFL–CIO, HUD Council 22 and Dep't of*

---

**1.** *See* 5 C.F.R. § 351.402 (defining "competitive area"). A reduction in force (RIF) occurs when an agency

releases a competing employee from his or her competitive level by furlough for more than 30 days, separation, demotion, or reassignment requiring displacement, when the release is required because of lack of work; shortage of funds; insufficient personnel ceiling; reorganization; the exercise of reemployment rights or restoration rights; or reclassification of an employee's position [due] to erosion of duties. . . .

5 C.F.R. § 351.201(a)(2).

**2.** Within a competitive area, the set of employees who actually compete with one another is further delineated by "competitive levels," which define employees whose duties, qualifications, and compensation are comparable. *See* 5 C.F.R. § 351.403. Although union proposals concerning competitive areas often are accompanied by proposals defining pertinent competitive levels, no competitive level proposal is at issue in the cases before us.

*Hous. & Urban Dev.*, 23 FLRA 552, 553 (1986) (*HUD Council*).

Each of the four cases consolidated for our review presented the identical legal issue to the FLRA: whether a union proposal that would define an agency's competitive area is within the agency's duty to bargain collectively, despite the proposal's direct impact on employees who are not represented by the bargaining union. In all four cases, the agency refused to bargain over the competitive area, and the FLRA upheld that refusal.[3]

The Authority's reasoning in its first consideration of the *Local 32* case indicates the approach that has guided the FLRA's course in these cases both before and after this court's decision in *Local 32.* The FLRA, regarding the impact on employees other than those represented by the negotiating union as dispositive of bargainability, held that an agency's statutorily imposed duty to bargain does not extend to proposals with a direct impact on the working conditions of employees outside the bargaining unit. 14 FLRA 754 (1984).

In our first encounter with this matter, *Local 32*, 774 F.2d 498 (D.C.Cir.1985), Judge McGowan, writing for the court, identified a number of infirmities in the FLRA's reasoning. Of prime importance, the Authority's position in the original *Local 32* and *Local 29* cases appeared to be inconsistent with the FLRA's ruling in another case, *Association of Civilian Technicians, Pa. State Council and Pa. Army and Air Nat'l Guard*, 14 FLRA 38 (1984) (*ACT*). In *ACT*, the FLRA had held within an agency's duty to bargain a union proposal that in essence defined the agency's competitive area as coextensive with the bargaining unit.

The proposal in *ACT* specified that "nonbargaining unit technicians will not compete with bargaining unit technicians for bargaining unit positions." That proposal evidently would have had a direct effect on employees outside the bargaining unit for, in the event of a RIF, it would have eliminated those employees' eligibility to compete for positions within the unit. The court pointed out that the effect of the proposal in *ACT* appeared comparable to the proposals in *Local 32* and *Local 29.* The impact on employees not represented by the negotiating union seemed clear in all three instances, although in *Local 32* and *Local 29* the union sought inclusive rather than exclusive definitions of the pertinent competitive area. The FLRA, we said, had failed to explain intelligently why *Local 32* and *Local 29* were not decided the same way as *ACT*, or to adopt explicitly a new approach. 774 F.2d at 503–04.

This failure was all the more troubling, we observed, in light of other Authority precedent holding proposals within the duty to bargain despite an evident effect on nonbargaining unit employees. *See Local 32*, 774 F.2d at 503 & n. 5. Reinforcing this second consideration was a third: the "familiar principle of private sector labor law" that a proposal "vitally affecting" the terms or conditions of unit employees is subject to mandatory bargaining despite its potential effects on third parties. *Id.* (citing *Ford Motor Co. v. NLRB*, 441 U.S. 488, 502, 99 S.Ct. 1842, 1851, 60 L.Ed.2d 420 (1979); *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 179, 92 S.Ct. 383, 397, 30 L.Ed.2d 341 (1971); and *Fibreboard Paper Prods. Co. v. NLRB*, 379 U.S. 203, 210, 85 S.Ct. 398, 402, 13 L.Ed.2d 233 (1964)). Finally, we

---

**3.** American Fed'n of Gov't Employees, AFL–CIO, HUD Council 22 and Dep't of Hous. & Urban Dev., 23 FLRA 552 (1986) (*HUD Council*); National Treasury Employees Union and Nuclear Regulatory Comm'n, 22 FLRA 707 (1986) (*NRC*); American Fed'n of Gov't Employees, Local 32 AFL–CIO and Office of Personnel Management, 14 FLRA 754 (1984) (*Local 32*), remanded in Local 32, Am. Fed'n of Gov't Employees, AFL–CIO v. FLRA, 774 F.2d 498 (D.C. Cir.1985), decided after remand, 22 FLRA No. 49 (July 9, 1986) (*Local 32 II*); National Fed'n of

Fed. Employees, Local 29 and Dep't of the Army, U.S. Army Corps of Engineers, Kansas City Mo. Dist., 16 FLRA 75 (1984) (*Local 29*), remanded in Local 32, Am. Fed'n of Gov't Employees, AFL–CIO v. FLRA, 774 F.2d 498 (D.C. Cir.1985), decided after remand, 22 FLRA 692 (1986).

*HUD Council, NRC,* and *Local 29* briefly rehearse the analysis set out at length in *Local 32 II,* and the court's discussion therefore centers on that decision.

noted, in one of the cases then before us, the agency in the previous bargaining period had assumed that the definition of a competitive area in a RIF was bargainable. *Local 32*, 774 F.2d at 504.

After our remand in *Local 32*, the Authority adhered to its initial rulings; the FLRA concluded that none of the proposals at issue in the four cases now here falls within an agency's statutory duty to bargain.[4] In explanation of its dispositions, the Authority stated:

> Under the Statute, in determining the negotiability of proposals which affect the conditions of employment of unit as well as nonunit employees, the Authority will balance the right of the union to negotiate over the conditions of employment of bargaining unit employees and the right of the agency to set the conditions of employment of nonbargaining unit employees. In weighing the parties' respective rights, we will determine whether the nature and degree of the impact of the proposal is so intrinsically related to the working conditions of nonunit employees so as to invade the purview of other unit representatives or require the agency to act in a way that will have a significant effect on the rights of employees not represented by the union offering the disputed proposal. In such a case, management is not required to bargain. However, where the proposal has only a limited or indirect effect on the interests of employees outside the bargaining unit it will be subject to appropriate negotiations.

*American Fed'n of Gov't Employees, Local 32, AFL–CIO and Office of Personnel Management*, 22 FLRA No. 49 at 8 (July 9, 1986) (*Local 32 II*).

The Authority concluded that its decisions in *Local 32* and *ACT* were consistent, in view of its balancing approach, because the proposal in *ACT* "would have directly determined the competitive area only for bargaining unit positions and employees." *Local 32 II*, No. 49 at 6. Non-unit employees were affected in *ACT* by their exclusion from the bargaining unit's competitive area, the FLRA acknowledged, but it termed that impact "indirect," because the *ACT* proposal "did not otherwise limit or prescribe a competitive area for those nonunit employees." *Id.*

Other cases noted by the court in *Local 32 II* also presented no inconsistency, the Authority maintained. When the FLRA declared proposals that would have affected nonunit employees nevertheless within an agency's duty to bargain, the Authority said, nonunit employees were affected only "to a lesser degree," thus mandatory bargaining was in order. *Id.* at 3.

The FLRA recognized its departure from private sector labor law, but said it found "no indication that Congress intended [application of that] substantive case precedent" in the federal employment sector. *Id.* at 7. Congress intended the FSLMRA to be interpreted "in a manner consistent with the requirements of an effective and efficient government," *see* 5 U.S.C. § 7101, the Authority observed, and that intention, the FLRA believed, justified its novel approach. "[A] rule requiring negotiation on proposals which actually establish conditions of nonunit employees goes beyond the requirements of the Statute," the Authority said, "and might unduly impede the agency in functioning effectively and efficiently." *Local 32 II*, No. 49 at 3.

As to this court's observation regarding the bargaining history of competitive area proposals, the Authority noted that even when proposals "directly determine" working conditions of nonunit employees, they may and indeed have been treated as *permissive* subjects of bargaining. The Authority indicated, however, that a history of bargaining would not preclude an agency from refusing to bargain in the future about competitive area proposals that significantly affect or directly determine the working conditions of nonunit employees. *Id.* at 7–8.

## II.

In the course of this dispute the matter in controversy has been brought into sharp-

4. *See supra* note 3.

er focus. The Authority recognizes that, in the absence of an impact on nonunit employees, or conflict with the management rights expressly enumerated and reserved to agencies in the statute, *see* 5 U.S.C. § 7106, competitive area proposals are among the "working conditions" that qualify as mandatory subjects of collective bargaining.[5] The Authority has not argued that the proposals now at issue conflict with the management rights conferred in § 7106, nor is there any argument that the proposals are exempt from bargaining under 5 U.S.C. § 7117, which precludes proposals that conflict with federal law or an agency regulation for which there is a compelling need. Instead, the Authority claims an inherent right or responsibility, as expert adjudicator, to balance the agency's duty to bargain against the agency's right to determine the working conditions of nonunit employees.

Ordinarily, courts are obliged to defer to the FLRA's construction of the FSLMRA if the construction is a "reasonable and defensible" one. *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). The Authority asserts such respect is owed to it in this instance. The concerns already set forth, however, led the court away from a deferential approach when this issue was first presented to us two terms ago. *Local 32*, 774 F.2d at 502. Those concerns have not been satisfied and, consistent with our approach to other FLRA decisions that appear incompatible with either the terms or the purpose of the controlling statute, or that conflict with prior FLRA precedent, we will continue to subject the FLRA decisions at issue to closer scrutiny. *See FLRA v. Aberdeen Proving Ground,* — U.S. ——, 108 S.Ct. 1261, 1263, 99 L.Ed.2d 470 (1988) (per curiam); *Bureau of Alcohol, Tobacco & Firearms*, 464 U.S. at 97, 104 S.Ct. at 444.

The fatal flaw in the Authority's opinion on remand lies in the balancing approach it has formulated to evaluate the negotiability of proposals that affect nonunit employ-

ees. An approach that ostensibly balances conflicting rights undoubtedly strikes a basic judicial chord; "balancing" is often identified as altogether rational. For the FLRA's approach here to comport with a reasonable construction of a statute, however, the "rights" assertedly at issue must have some substantive basis in law.

In upholding the refusals to bargain in these cases, the Authority believed it proper to "balance the right of the union to negotiate over the conditions of employment of bargaining unit employees and the right of the agency to set the conditions of employment of nonbargaining unit employees." *Local 32 II*, No. 49 at 3. In declaring that agencies have the "right" to determine the working conditions of nonunit employees, the FLRA relied on its general duty "to provide leadership in establishing policies and guidance" under the statute. *See* 5 U.S.C. § 7101. That leadership responsibility, however, does not permit the Authority to arrogate to itself the power to define new management rights that have no textual source.

The inherent authority claimed by the FLRA is especially problematic in the federal employment sphere, because the FSLMRA specifically identifies and preserves certain management rights for federal agencies and excludes them from the bargaining process. *See* 5 U.S.C. § 7106. The right to refuse to bargain over proposals that affect the working conditions of nonunit employees is not among the management rights that the FSLMRA identifies, nor can such a right be inferred from other provisions that qualify the duty to bargain. *See* 5 U.S.C. § 7106 (management rights); 5 U.S.C. § 7117 (no duty to bargain over proposals that are inconsistent with federal law, or with an agency regulation for which there is a compelling need). The Authority has offered no argument to persuade us that the statute's express delineation of management rights should be augmented or supplemented by inherent FLRA power to qualify an agen-

---

5. *See* 5 U.S.C. § 7103(a)(12) (duty to bargain in good faith regarding conditions of employment); 5 U.S.C. § 7103(a)(14) (defining condi-

tions of employment). *See generally National Fed'n of Gov't Employees v. FLRA*, 828 F.2d 834, 835–36 (D.C.Cir.1987).

cy's duty to bargain over working conditions.

In assuming this inherent authority, the FLRA confronted and rejected the standard that prevails in private sector labor law. In that domain, a proposal affecting nonunit employees is nonetheless considered within the duty to bargain as long as it "vitally affects" working conditions for those the union represents. *Local 32*, 774 F.2d at 503 (citing *Ford Motor Co. v. NLRB*, 441 U.S. 488, 502, 99 S.Ct. 1842, 1851, 60 L.Ed.2d 420 (1979)). The Authority dismissed this standard because it located no evidence showing that Congress intended private sector precedent to control this issue. *Local 32 II*, No. 49 at 3.

This reasoning slides too swiftly over the relationship between these distinct but related bodies of law. The FLRA correctly asserted that the FSLMRA was not drafted as a "mirror image" to comparable legislation governing the private sector; however, "[t]here is no question that Congress was fully aware of the analogy between the [FSLMRA] and the National Labor Relations Act, 29 U.S.C. §§ 151–68." *National Treasury Employees Union v. FLRA*, 810 F.2d 295, 299 (D.C.Cir.1987) (*NTEU*). We have repeatedly observed that the former was modeled on the latter, and that its provisions were "crafted either by analogy or by contrast." *Id.; see also American Fed'n of Gov't Employees v. FLRA*, 785 F.2d 333, 336 (D.C.Cir.1986). In this light, when the Authority departs from a familiar principle rooted in private sector precedent, it should either identify "practical distinctions between private and governmental needs" that justify the departure, or offer some evidence in the language, history, or structure of the statute suggesting that Congress intended a different result. *See*

*FLRA v. Social Security Admin.*, 846 F.2d 1475, 1478 (D.C.Cir.1988); *NTEU*, 810 F.2d at 299.

The Authority did not engage in such reasoned analysis. Instead, it offered only its bare conclusion that requiring negotiations on proposals that would "actually establish" conditions of work for nonunit employees "might unduly impede the Agency in functioning effectively and efficiently." *Local 32 II*, No. 49 at 3.[6] This style of unelaborated assertion cannot bring rationality or security to the bargaining process, *see Local 32*, 774 F.2d at 504, and it will not serve to justify our approval of what the FLRA has done here. Essentially, the Authority has conferred on federal agencies a new management right that Congress, so far as we can tell, did not contemplate.

Nor does the *Local 32 II* decision indicate to us that the FLRA has a clear vision of the standard it is purporting to follow. At one point, the Authority states that a proposal is not bargainable if it "actually determines" the working conditions of nonunit employees; at another, the Authority defines a lower standard, under which a proposal is not bargainable if it has a "significant effect" on nonunit employees. *Compare Local 32 II*, No. 49 at 5, *with id.* at 8. More recently, the FLRA has altered its formulation yet again, limiting invocation of its asserted inherent authority to "[a] proposal which has a direct and significant effect *on vital interests* of nonunit employees." *Federal Employees Metal Trades, Union Council of Charleston and Dep't of the Navy, Charleston Naval Shipyard*, 32 FLRA 102 (1988).

The more recent competitive area decisions, like the earlier ones, do not satisfactorily explain how these rulings comport

---

**6.** The Authority endeavors to identify this consideration with a footnote in *Allied Chem. & Alkali Workers Union v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 179 & n. 19, 92 S.Ct. 383, 398 n. 19, 30 L.Ed.2d 341 (1971), which simply notes (without endorsement) the possibility that a private employer's freedom to conduct his business might be pertinent to bargaining proposals affecting third parties. A like suggestion appears in the later opinion in *Ford Motor Co. v. NLRB*, 441 U.S. 488, 498, 99 S.Ct. 1842, 1849, 60 L.Ed.

2d 420 (1979), but such suggestions hardly advance the FLRA's position here. For federal employers, the core management prerogatives to which these dicta in private sector cases refer are specifically protected by the FSLMRA. *See* 5 U.S.C. § 7106. Further protection of such rights is found in the FSLMRA provision that prohibits bargaining over proposals that are inconsistent with federal law or with an agency regulation for which there is a compelling need. 5 U.S.C. § 7117.

with *ACT*, which declared negotiable a proposal excluding nonunit employees from the unit's competitive area. The *ACT* proposal, it appears, surely could have had a "significant effect" on nonunit employees: under that proposal, a nonunit employee displaced by a RIF might lose his bid for retention to a unit employee with far less seniority. The basis on which the Authority now concludes that this is not a "significant effect," or that the bid for retention is not a "vital interest," is incomprehensible.[7]

Having twice failed to articulate an intelligible rationale for determining when an impact on nonunit employees precludes mandatory bargaining over a competitive area proposal, the Authority should reconsider the standard that obtains in the private sector. Under that standard, the expert adjudicator inquires only whether vital interests of unit employees would be affected by a given proposal, and permits bargaining over such proposals without regard to the potential effect on nonunit employees. Before asserting that the FSLMRA requires more with respect to

competitive area proposals or any other subjects of bargaining, the FLRA must tie its disposition to a solid foundation. It is not enough to refer in Delphic tones to inherent authority, or to rely vaguely on the Authority's general duty to interpret the statute with government efficiency in mind.

### CONCLUSION

The cases consolidated before us are remanded to the FLRA, with the expectation that this time round the Authority's decisions will be sufficiently intelligible "to ensure that future negotiations are conducted within an atmosphere of certainty as to the applicable law." *Local 32*, 774 F.2d at 504.

*It is so ordered.*

7. This court occasionally has upheld FLRA doctrines that claim to balance competing interests, even while harboring "deep suspicion" about their logical coherence, and a fear that "the standard lends itself to completely unprincipled and inconsistent application." *See National Fed'n of Fed. Employees v. FLRA*, 801 F.2d 477, 481 (D.C.Cir.1986) (Scalia, J.). Such indulgence is not limitless, however; it is largely confined to situations in which the FLRA interprets a provision unique to the FSLMRA. Deference is not due, if our review function is not to be a "rubber stamp," when the Authority has failed to bring coherence to its decisions or to satisfy this court's earlier mandate.