# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 7, 2021   Decided February 1, 2022

No. 20-1396

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
AFL-CIO,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

Consolidated with 20-1397, 20-1404

———

On Petitions for Review of an Order
of the Federal Labor Relations Authority

———

*Matthew W. Milledge* argued the cause for petitioners. With him on the briefs were *David A. Borer*, *Andres M. Grajales*, *Judith E. Rivlin*, *Teague P. Paterson*, *Gregory O'Duden*, *Julie M. Wilson*, and *Allison C. Giles*.

*Noah Peters*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *Rebecca J. Osborne*, Deputy Solicitor, and *Sarah C. Blackadar*, Attorney.

Before: TATEL, PILLARD and JACKSON, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* JACKSON.

JACKSON, *Circuit Judge*:  By statute, certain federal employers are required to engage in collective bargaining with their employees' representatives whenever there is a management-initiated change to the "conditions of employment affecting such employees."  Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7103(a)(12); *see also id.* §§ 7102(2), 7103(a)(14).  Congress has defined "conditions of employment" to include "personnel policies, practices, and matters . . . affecting working conditions," with certain enumerated exceptions.  *Id.* § 7103(a)(14).  And from the mid-1980s until the policy statement challenged here, the Federal Labor Relations Authority ("FLRA") interpreted these statutory provisions to require collective bargaining over any workplace changes that have more than a de minimis effect on such working conditions.

In September of 2020, the FLRA adopted a new threshold for when collective bargaining is required.  Under the agency's new standard, the duty to bargain is triggered only if a workplace change has "a substantial impact on a condition of employment."  *U.S. Dep't of Educ.*, 71 F.L.R.A. 968, 971 (2020).  The petitioners are public-sector labor unions that challenge the FLRA's decision to alter the bargaining threshold; they maintain that the FLRA's new standard is both inconsistent with the governing statute and insufficiently explained, and is therefore arbitrary, capricious, and contrary to law.

In the opinion that follows, we hold that the FLRA's decision to abandon its de minimis exception in favor of a substantial-impact threshold was not sufficiently reasoned, and thus is arbitrary and capricious in violation of section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).  We therefore grant the unions' petitions for review and vacate the FLRA's policy statement.

## BACKGROUND

Before the fall of 2020, it was the longstanding view of the FLRA that, despite certain federal employers' clear statutory

duty to engage in collective bargaining over "conditions of employment," 5 U.S.C. § 7103(a)(12), some public-sector management decisions were not subject to bargaining if they had only a "de minimis impact" on such conditions. *Dep't of Health & Human Servs. Soc. Sec. Admin.*, 24 F.L.R.A. 403, 407 (1986); *see also Dep't of Health & Human Servs. Soc. Sec. Admin. Reg. V*, 19 F.L.R.A. 827, 834 (1985) (McGinnis, concurring); *Dep't of Health & Human Servs. Soc. Sec. Admin. Chi. Region*, 15 F.L.R.A. 922, 924 (1984). The de minimis impact exception, the FLRA explained, "derive[s] from the Latin phrase 'De minimis non curat lex,' which . . . mean[s] that the law does not care for, or take notice of, very small or trifling matters[.]" *Dep't of Health & Human Servs. Soc. Sec. Admin*, 24 F.L.R.A. at 407 & n.2 (quoting *De Minimis Non Curat Lex*, BLACK'S LAW DICTIONARY (5th ed. 1979)). In other words, the FLRA read 5 U.S.C. § 7103(a)(12) and (14) to imply a narrow exception to the statute's collective bargaining requirement; one that pertained to management decisions that had only a trivial effect on conditions of employment.

In October of 2019, the United States Departments of Education and Agriculture jointly requested that the FLRA issue a general statement of policy changing the impact threshold at which collective bargaining becomes mandatory. *See* 5 C.F.R. § 2427.2 (providing for general statements of policy or guidance). The Departments alleged several problems with the longstanding de minimis standard. For instance, they asserted that the de minimis policy was insufficiently concrete to permit consistent application, causing unnecessary litigation. They also asserted that "effective and efficient government would be promoted by the establishment" of a clearer standard, and they maintained that the ideal standard would be one under which only a "substantial change"—or, rather, a change having a "substantial impact" on conditions of employment—triggers the duty to bargain. Request for General Statement of Policy or Guidance at 3–4, J.A. 3–4.

On September 30, 2020, the FLRA adopted the Departments' proposed standard over a dissent and without

soliciting public comment. In a four-page policy statement, the FLRA announced that "an agency will not be required to bargain over a change to a condition of employment unless the change is determined to have a substantial impact on a condition of employment." *Dep't of Educ.*, 71 F.L.R.A. at 971. The FLRA stated that the "more than de minimis" test for determining when the duty to bargain is triggered is "not the appropriate standard," *id.*, in part because that test had resulted in bargaining "whenever management has made any decision, no matter how small or trivial" and is also "unpredictable," *id.* at 969. The FLRA further faulted the initial agency decision to adopt the de minimis standard on the grounds that it was insufficiently explained. *Id.* at 970. With respect to the substantial-impact test, the FLRA suggested that this new standard would create "a line that [was] meaningful and determinative[,]" and noted that substantial impact is the governing bargaining threshold in the private sector. *Id.*

The FLRA's dissenting member argued that the agency's adoption of a new bargaining threshold was an unjustifiable departure from past precedent and that there was a clear legal basis for the agency's prior adoption of the de minimis standard. *See id.* at 972 (DuBester, dissenting). The dissent also maintained that the substantial-impact test was contrary to the governing statute, *id.* at 973, and that the FLRA's policy change was not sufficiently reasoned or explained, *id.* at 973–76.

The petitioners in these consolidated cases—the American Federation of Government Employees, AFL-CIO, the National Treasury Employees Union, and the American Federation of State, County and Municipal Employees, AFL-CIO—are labor unions that represent employees of government agencies that the FLRA's policy change covers. Each filed a timely petition for review of the FLRA's policy statement, and we consolidated the petitions. The unions have standing as employee representatives whose "bargaining position" would be "fundamentally diminished" under the FLRA's new interpretation, *see Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 853 (D.C. Cir. 2006), and we have jurisdiction over

their petitions for review, *see* 5 U.S.C. § 7123(a).

The unions challenge the FLRA's policy statement on two grounds, both of which implicate APA standards. First, they argue that the new substantial-impact threshold rests on an impermissible reading of 5 U.S.C. §§ 7103(a)(12) and (a)(14); they contend, in particular, that removing management-initiated changes whose effects are more than de minimis but less than substantial from the scope of collective bargaining is contrary to the plain and unambiguous language of these statutory provisions. Second, the unions assail the FLRA's policy statement adopting the substantial-impact standard as arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). In this regard, according to the unions, the FLRA's explanation for dispensing with its old policy and adopting the new one was insufficient to support the policy change.

## DISCUSSION

Our analysis begins with the petitioners' arbitrary and capricious challenge. The petitioners also challenge the substantial-impact exception as contrary to the statute and unsupported by any canon that would justify its treatment as "inherent in most statutory schemes by implication." *See Ass'n of Admin. Law Judges v. FLRA* (*AALJ*), 397 F.3d 957, 962 (D.C. Cir. 2005) (quoting *Env't Def. Fund, Inc. v. EPA*, 82 F.3d 451, 466 (D.C. Cir. 1996)). Because we hold that the policy is unreasoned, we need not and do not reach the statutory claim. *Cf. Shays v. FEC*, 414 F.3d 76, 97 (D.C. Cir. 2005) (declining to assess a claim about the meaning of a statutory provision where the failure of the challenged action under the arbitrary and capricious standard offered a sufficient basis for decision).

Under the arbitrary and capricious standard, "we must ensure that the [FLRA] 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *AFGE v. FLRA* (*AFGE 2020*), 961 F.3d 452, 456 (D.C. Cir. 2020) (alterations in original) (quoting *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017)). The key question is, at its core, whether the FLRA "engage[d] in

reasoned decisionmaking." *Fred Meyer*, 865 F.3d at 638 (internal citations omitted); *see also FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). And while the FLRA certainly "may depart from its precedent," in so doing, it "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed." *AFGE 2020*, 961 F.3d at 457 (quoting *Nat'l Fed'n of Fed. Emps. v. FLRA*, 369 F.3d 548, 553 (D.C. Cir. 2004)). The agency must also show that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better" than the previous policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis omitted).

With these standards in mind and for the reasons explained below, we conclude that the FLRA's decision to abandon its longstanding precedents and adopt the substantial-impact standard was not sufficiently reasoned in several critical respects.

**A**

The first problem with the FLRA's reasoning is that its policy statement falls short on explaining the purported flaws of the de minimis standard.

To start, the policy statement's description of the problem it seeks to solve is inconsistent. At the beginning of its substantive discussion, the FLRA laments that "[it] has effectively extended the bargaining obligation under the de minimis test to . . . trigger[] an agency's duty to bargain whenever management has made any decision, no matter how small or trivial." *Dep't of Educ.*, 71 F.L.R.A. at 969. The policy statement explains that this purportedly ubiquitous misapplication of the de minimis standard to require bargaining in any and all circumstances has "drained" that standard "of any determinative meaning[.]" *Id.* In the preceding paragraphs, however, the policy statement's background section highlights its concern that the de minimis standard is "unpredictable" and "has created uncertainty," citing several examples of cases in which the FLRA concluded that a workplace change *was* de minimis and thus beyond the scope

of bargaining. *Id.* at 969 & n.14; *see also id.* at 970 n.18 (explaining that the FLRA forewent solicitation of public comments "because we are well aware of the confusion sown by nearly thirty-five years of our caselaw").

It is not at all clear how the de minimis standard could both lead inexorably to the conclusion that all management decisions "no matter how small or trivial" must be subject to bargaining and at the same time yield unpredictable results, including, by the FLRA's own telling, many instances in which the duty to bargain was *not* triggered. *See id.* at 969 & n.14. Yet that is how the FLRA's policy statement reads: the existing standard both purportedly subjects every minor decision to review *and* is unworkable because it is impossible to predict.

Even looking past this apparent contradiction, the FLRA's claim that the de minimis standard's unpredictability has "created uncertainty that has negatively impacted labor-management relations" is unconvincing on its own terms. *Id.* at 969 (internal quotation marks omitted). As evidence of the "vast differences of opinion among arbitrators, judges, and the [FLRA itself] as to what matters affect conditions of employment sufficiently to require bargaining," the FLRA cites four pairs of decisions that involve purportedly similar facts in which the FLRA found certain management-initiated changes to be more than de minimis (and thus subject to bargaining) and others to be de minimis (and thus not). *Id.* at 969 & n.14. But closer inspection reveals that these divergent results are readily explained by distinguishable contexts. *See id.* at 973 (DuBester, dissenting) ("[T]he cases cited by the majority simply reflect the inherently fact-dependent nature of the de minimis exception.").

Take, for instance, the policy statement's citation to two decisions about office and seating arrangements that the agency now claims were contradictory. In *Social Security Administration, Baltimore, Maryland*, the FLRA concluded that "changes in seating assignments . . . including the movement of four employees (one-fourth of all [bargaining] unit employees) and one employee[']s[] loss of access to a

window" when considered together were "sufficient to support the . . . conclusion that the changes in seating arrangements were more than de minimis." *U.S. Dep't of Health & Human Servs., Soc. Sec. Admin., Balt., Md.*, 36 F.L.R.A. 655, 668, 688 (1990)). In *GSA, Region 9*, on the other hand, the FLRA determined that an employer's decision to temporarily move a single employee to another building—after her union suggested that such a temporary move would *benefit* the employee—had, in light of "equitable considerations," only a de minimis impact on her working conditions. 52 F.L.R.A. 1107, 1108–09, 1111–12 (1997).

To describe these decisions is to distinguish them. And the latter decision, *GSA, Region 9*, indeed expressly distinguished the former as being about a "permanent relocation[] of employees that w[as] instituted by agency management for operational reasons," rather than a temporary move at the employee's union's suggestion. *See id.* at 1112 (citing *U.S. Dep't of Health & Human Servs., Soc. Sec. Admin., Balt., Md.*, 36 F.L.R.A. at 655). The FLRA's summary assertion that these decisions were irreconcilable and thus evidence of the de minimis exception's unpredictability thus lacks merit.

The FLRA's other examples are more of the same. For instance, the agency speciously summarizes one of its decisions as holding that "[r]equiring [an] employee to give up a 'second' office while keeping [his] primary office" was "more than de minimis" and another as determining that "moving an employee permanently to a vacant office [was] held not to be more than de minimis." *Dep't of Educ.*, 71 F.L.R.A. 969 n.14 (first citing *U.S. Dep't of the Air Force, Air Force Materiel Command, Space & Missile Sys. Ctr., Detachment 12, Kirtland Air Force Base, N.M.*, 64 F.L.R.A. 166, 173–74 (2009); and then citing *Nat'l Treasury Emps.' Union, Chapter 26*, 66 F.L.R.A. 650, 653 (2012)).

But these decisions too are readily distinguishable on their facts. *U.S. Department of the Airforce* concerned an employer's decision to downsize the workspace of a trainer

who was a member of the relevant collective bargaining unit. 64 F.L.R.A. at 173–74. In that case, the FLRA held that the employer's decision to downsize the trainer's primary office at the same time it took away a second workspace that he had used to conduct certain face-to-face training and store equipment— changes made on short notice and without relocation assistance—when viewed alongside problems with the new workspace, constituted a more-than-de minimis change. *See id.* In stark contrast, *National Treasury Employees' Union, Chapter 26*, was not about the reassignment of a union employee at all; instead, it concerned a union's challenge to an employer's decision to assign an employee outside the bargaining unit to a vacant workstation in the same office as employees in the bargaining unit. 66 F.L.R.A. at 652–53. Unsurprisingly, the FLRA held that the mere presence of an employee outside the bargaining unit in the same office as unit members had only a de minimis effect on the union employees' conditions of employment. *Id.* at 653. Once again, the FLRA's evidence of an irretrievably broken standard falls flat.

As this court observed once before, "there is little indication that the de minimis exception" has created the sort of "confusion" the FLRA now claims. *AALJ*, 397 F.3d at 963. Rather than demonstrate such confusion, the examples that the FLRA cites to frame the problem it seeks to address seem to us to demonstrate rigorous application by the FLRA of a fact-intensive standard to varying factual contexts. Put another way, far from demonstrating the de minimis standard is unworkable, the FLRA's policy statement simply appears to demonstrate how it works.

## B

The FLRA's condemnation of the de minimis test also fails to grapple with the agency's own past policy choices and this court's decisions upholding them.

### 1

In the policy statement under review, the FLRA insists that the agency's initial adoption of the de minimis threshold back in 1985 was insufficiently explained and reasons that this initial

failure supports the 2020 policy change. In this regard, the FLRA explains that the agency had used a substantial-impact standard for a few years before it adopted the de minimis threshold in 1985. And it calls the decision to discard the substantial-impact standard in favor of the de minimis threshold "specious" for failing to "provide any rationale as to why the substantial impact standard was incorrect." *Dep't of Educ.*, 71 F.L.R.A. at 970 n.24. The FLRA further suggests that if a rigorous statutory analysis had been done in 1985, the agency would have discovered that "the de minimis standard is inconsistent with the purposes of the Statute." *Id.* at 971. Thus, the FLRA seeks to cast its policy change as merely correcting thirty-five-year-old procedural and interpretive errors.

That rationale cannot withstand scrutiny. It is true that before it adopted the de minimis exception in 1985 the FLRA had applied a substantial-impact standard like the one at issue here, apparently as a carryover from the executive-order regime that governed public-sector labor relations before the enactment of the Labor-Management Relations Statute in 1978. But the mere fact that the FLRA briefly used a substantial-impact standard soon after the agency's creation does not provide inherent support for the present decision to discard thirty-five years of intervening precedent and return to that past policy. Indeed, Executive Order 11491, which governed before the Labor-Management Relations Statute, did not require bargaining at all. Instead, it directed agencies to "meet . . . and confer in good faith with respect to personnel policies and practices and matters affecting working conditions, so far as may be appropriate," Exec. Order No. 11,491 § 11(a), 3 C.F.R. (1966-1970), which is in marked contrast to the Labor-Management Relations Statute's requirement that agencies bargain over "any condition of employment," 5 U.S.C. § 7114(b)(2); *see also Nat'l Fed'n of Fed. Emps. v. FLRA*, 369 F.3d 548, 554 (D.C. Cir. 2004) ("Congress passed the Federal Labor Relations Act to encourage collective bargaining between federal employees and their employers."). And the FLRA has itself recognized that the Labor-Management Relations Statute is more

protective of collective bargaining than was the Executive Order and practice thereunder. *See Dep't of Educ.*, 71 F.L.R.A. at 974 & nn. 42–44 (DuBester, dissenting).

Furthermore, the FLRA's characterization of its earlier decisions as lacking explanation for its adoption of the de minimis exception is misleading. In fact, as the dissenting Commissioner points out, *id.* at 974–75 (DuBester, dissenting), those earlier decisions expressly considered the question, and in light of Congress's clear purpose of expanding public-sector bargaining rights, the mid-1980s FLRA specifically "rejected the 'substantial impact' test" in favor of the de minimis exception, *Dep't of Health & Human Servs. Soc. Sec. Admin. Chi. Region*, 15 F.L.R.A. at 924. What is more, the agency explained back then that it was rejecting the substantial-impact threshold both because the de minimis test struck the correct balance between government efficiency interests and labor rights, *see Dep't of Health & Human Servs. Soc. Sec. Admin. Reg. V*, 19 F.L.R.A. at 834 (McGinnis, concurring), and because "[t]he limited scope of Federal sector bargaining caused by external laws, rules, and regulations also demands that the [FLRA] not impose further limitations unless they are based on clear statutory authority and are buttressed by sound policy considerations," *Dep't of Health & Human Servs. Soc. Sec. Admin.*, 24 F.L.R.A. at 406–07. And the FLRA has since reiterated the view that the de minimis standard is "the appropriate threshold" under the relevant statutory provisions. *Soc. Sec. Admin. Off. of Hearings & Appeals*, 59 F.L.R.A. 646, 653 (2004), *aff'd*, *AALJ*, 397 F.3d at 964.

To be sure, the FLRA's reasons for replacing the substantial-impact standard with the de minimis exception back in the mid-1980s were not tidily arranged in a single decision. But the FLRA's present assertion that the agency had offered no "explanation or rationale to support the change" from the substantial-impact test to the de minimis standard, *Dep't of Educ.*, 71 F.L.R.A. at 970, is simply incorrect.

Notably, even if the FLRA had failed to provide an adequate explanation for its adoption of the de minimis

standard more than thirty-five years ago, any such failure would not absolve the agency of its present-day responsibility to *explain* its decision to jettison the precedents that apply the de minimis threshold. The FLRA cannot point to a latent and unchallenged purported defect in the original adoption of its prior policy and offer that as an independent basis for adopting a new one. Rather, the decision to adopt a new policy must be sufficiently explained on its own terms, because "[i]n administrative law, as elsewhere, two wrongs do not make a right." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 928 (D.C. Cir. 2017). We have long held that "we cannot condone the 'correction' of one error by the commitment of another," *id.* (quoting *Gray v. Mississippi*, 481 U.S. 648, 663 (1987)), and we decline to do so here.

**2**

Finally, to the extent that the FLRA now asserts that the de minimis standard must go because it is categorically "inconsistent with the purposes of the [Labor-Management Relations] Statute," *Dep't of Educ.*, 71 F.L.R.A. at 971, *that* contention is plainly contrary to this court's past interpretation of the statute.

In *AALJ*, for instance, a union challenged the FLRA's application of the de minimis exception to a new category of management decisions. The agency argued the exception was inherent in the statute, and thus urged us to hold that collective bargaining was not required for a de minimis change to conditions of employment. We agreed, concluding that an exception for de minimis effects on conditions of employment is "inherent in" the statute and thus "neither contrary to the text nor unreasonable in light of" the Labor-Management Relations Statute's purpose. *AALJ*, 397 F.3d at 959, 962.

Our holding in *AALJ* is a clear recognition of the appropriateness of a de minimis exception to the duty to bargain, as a matter of law. Thus, when the FLRA nevertheless reached the conclusion that the de minimis test is not "appropriate" for determining whether the duty to bargain is triggered, *Dep't of Educ.*, 71 F.L.R.A. at 971, it not only

ignored its own decisions outlining the reasons for its adoption of the de minimis exception in the first place, but also "departed from precedent" that had expressly decided that the de minimis exception is consistent with the Labor-Management Relations Statute, *AFGE 2020*, 961 F.3d at 459. For this reason, too, we conclude the need for the policy change "is not sensibly explained." *Id*. (internal quotation marks omitted).

## C

Up to this point, we have focused on the deficiencies in the FLRA's reasons for its conclusion that the de minimis standard was so problematic that it needed to be changed. Beyond the various ill-defined reasons that the FLRA offers for departing from the de minimis threshold, the policy statement under review also undertakes to explain why the FLRA now prefers the substantial-impact standard. The FLRA points to two principal reasons for this decision. And, once again, neither is sufficiently explained.

## 1

The FLRA first heralds the substantial-impact standard's bona fides by suggesting that it draws "a line that is meaningful and determinative" for agencies and their employees seeking to navigate labor negotiations. *Dep't of Educ.*, 71 F.L.R.A. at 970. And in its brief the FLRA further contends that its finding that the new standard will be more predictable and administrable is "precisely the sort of predictive judgment" to which this court must defer. FLRA Br. 63.

But neither the FLRA's challenged decision nor its brief on review analyzes the relative administrability of the substantial-impact and de minimis standards. This is a critical "gap in [the FLRA's] reasoning[.]" *AFGE 2020*, 961 F.3d at 459. And the FLRA simply ignores the guidance and elaboration provided in its own opinions. *See, e.g., Dep't of Health & Human Servs. Soc. Sec. Admin. Region V*, 19 F.L.R.A. at 834–35 (McGinnis, concurring) (identifying five factors informing application of the de minimis standard). It is especially striking that the FLRA does not provide a comparative analysis of the two standards or in its policy

statement even argue that the substantial-impact standard used by the National Labor Relations Board (NLRB) in the private-sector context has in fact led to more predictable results, since, as noted above, the FLRA frames inconsistent application as the principal problem the new standard is designed to fix.

There is no obvious reason to expect that labor unions and employers will disagree less frequently about whether any given management decision has a "substantial impact" on conditions of employment than they previously did over whether such a decision had a more than de minimis effect. *But see Dep't of Educ.*, 71 F.L.R.A. at 971. Indeed, these two standards share many characteristics that might lead one to expect just as much disagreement—and, for that matter, just as many "differences of opinion among arbitrators, judges, and the [FLRA] as to what matters affect conditions of employment sufficiently to require bargaining[,]" *id.* at 969 (internal quotation marks omitted)—when the substantial-impact threshold is applied. *See also id.* at 973–74 (DuBester, dissenting) ("The majority fails to explain how adoption of its new standard will produce decisions that are any less fact-dependent than those applying the current standard."). Thus, the new standard that the FLRA has adopted is not the sort of "common sense" measure for "advanc[ing the decision's stated] goals"—here, predictability and streamlined administration—that we have found adequate to withstand arbitrary and capricious review. *Free Access & Broad. Telemedia, LLC v. FCC*, 865 F.3d 615, 618 (D.C. Cir. 2017).

To address this obvious shortcoming, the FLRA argues for the first time in its brief that the new substantial-impact standard will have more predictable results because the FLRA will be able to draw on fifty years of NLRB decisions applying the substantial-impact test. The FLRA does not explain in its brief or otherwise why the NLRB's substantial-impact decisions would be easier to apply than the FLRA's own thirty-five years of precedents using the de minimis test. But, regardless, this argument is forfeit because it was not raised "where it counts"—i.e., in the challenged decision itself. *AFGE 2020*, 961 F.3d at 457; *see Motor Vehicle Mfrs. Ass'n of*

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[C]ourts may not accept appellate counsel's post hoc rationalizations for agency action.").

What remains is the FLRA's bald assertion that its own "determination that the substantial impact test would draw a line that is [more] meaningful and determinative is precisely the sort of predictive judgment to which this [c]ourt accords heightened deference." FLRA Br. 63 (internal quotation marks omitted). We fully recognize that we must defer to expert agencies' "reasoned predictions about technical issues[.]" *BNSF Ry. Co. v. Surface Transp. Bd.*, 526 F.3d 770, 781 (D.C. Cir. 2008). But there is nothing technical about the predictability assessment that the FLRA makes here, and we are not bound by the FLRA's conclusory and counterintuitive assertions about the consistency with which its new standard is likely to be applied in subsequent adjudications, especially when the record contains no factual basis for making such a forecast.

With respect to its consistency concern, the FLRA must at least explain why and how it has concluded that the substantial-impact threshold is "better" than the standard it was relinquishing. *Fox Television*, 556 U.S. at 515. It has failed to do so.

**2**

The FLRA's final tack is to invoke the NLRB's longstanding use of a substantial-impact standard in the private-sector context, as an independent reason for the FLRA's adoption of the same collective bargaining threshold. The FLRA's policy statement asserts that, because "collective bargaining in the public sector" under the Labor-Management Relations Statute "must be narrower" than in the private sector, "[i]t is incongruous . . . [to apply] a standard more lenient than the test applied by the [NLRB] . . . to determine whether a change requires bargaining." *Dep't of Educ.*, 71 F.L.R.A. at 970. In its brief, the FLRA adds that it is not just permitted but indeed *required* to consider NLRB precedents when it administers parallel provisions of its statute; in this regard, it

points to our instruction that "when the [FLRA] departs from a familiar principle rooted in private sector precedent, it should either identify 'practical distinctions between private and governmental needs' that justify the departure, or offer some evidence in the language, history, or structure of the statute suggesting that Congress intended a different result." *AFGE v. FLRA* (*AFGE 1988*), 853 F.2d 986, 992 (D.C. Cir. 1988) (citation omitted).

But NLRB precedent cannot save the FLRA's unreasoned and unreasonable determination to import the substantial-impact standard. To start, the FLRA flips the controlling question on its head. Unlike in *AFGE 1988*, we are not being called upon to review a decision to part ways with NLRB precedent in the first instance. Instead, we are evaluating the FLRA's recent departure from its own longstanding precedents that since the 1980s have struck a balance that is different from the NLRB's decisions. In other words, the baseline for our review is the FLRA's longstanding and repeatedly reaffirmed decision to diverge from NLRB policy, which makes *AFGE 1988*'s explanation of what the FLRA must do to rationalize a new departure from NLRB precedent inapposite.

The FLRA's decision to adopt the NLRB's substantial-impact test also fails to account for the agency's own past assessments of how the differences between the public-sector and private-sector bargaining contexts inform the appropriate bargaining threshold. We have previously cautioned that the FLRA must "be careful to appreciate fully those distinctions between the private and public sectors that might necessitate a different legal analysis and conclusion" with respect to collective bargaining, since "the bargaining status of any given subject is determined by different statutory provisions and by different policy considerations." *Library of Cong. v. FLRA*, 699 F.2d 1280, 1287 (D.C. Cir. 1983).

The FLRA apparently took those distinctions into account in its 1986 decision in *Department of Health & Human Services Social Security Administration*, when it acknowledged the NLRB's substantial-impact standard was "similar[]" to the

FLRA's de minimis exception, 24 F.L.R.A. at 406 n.1, but nevertheless opted to apply the de minimis standard. Critically, that decision highlighted "[t]he limited scope of Federal sector bargaining caused by external laws, rules, and regulations[,]" and observed that this context "demands that the [FLRA] not impose *further* limitations unless they are based on clear statutory authority and are buttressed by sound policy considerations." *Id.* at 406–07 (emphasis added); *cf. Library of Cong.*, 699 F.2d at 1287 & n.33 (explaining that "[t]he scope of collective bargaining is far broader in the private sector," in terms of the categories of conditions subject to bargaining, since the Labor-Management Relations Statute "exclu[des] from the scope of federal sector bargaining [] matters provided for by federal statute, such as the pay rate or hours of employment").

Thus, the FLRA has held in the past that the relative substantive narrowness of the public-sector bargaining mandated under the Labor-Management Relations Statute in fact *supports* the de minimis standard notwithstanding the NLRB's more stringent bargaining threshold. *See Dep't of Health & Human Servs. Soc. Sec. Admin*, 24 F.L.R.A. at 407. That conclusion is precisely the opposite of the one that the FLRA reached here. The agency now ignores its earlier balancing of the factors unique to public-sector bargaining and fails to address the reasons that it previously found persuasive when it decided to select a test that differs from the one that pertains to private-sector bargaining.

We conclude that, whatever the virtues of the FLRA's present analysis concerning the statutory scheme for public-sector bargaining relative to its private-sector counterpart (which we do not here decide), the FLRA must acknowledge that in the past it reached the opposite conclusion about the need for congruity between the public- and private-sector bargaining thresholds. Thus, "[i]t is not enough" for the agency to now rest on abstract invocations of the "narrowness" of public-sector bargaining or "rely vaguely on [it]s general duty to interpret the statute with government efficiency in mind." *AFGE 1988*, 853 F.2d at 993. Rather, the FLRA's adoption of

the substantial-impact threshold after it previously and specifically rejected that standard must be built on a more "solid foundation," *id.*, including an explanation of the agency's view of why the new approach better comports with all of the provisions that Congress enacted to govern collective bargaining in the public sector. *See, e.g.*, 5 U.S.C. § 7101(a)(1)(B) (finding that collective bargaining "contributes to the effective conduct of public business").

The FLRA's failure to address its previous balancing of the Labor-Management Relations Statute's priorities—a balancing that led it to adopt a different policy than that of the NLRB—is yet another indication that the FLRA has not, in fact, "engage[d] in reasoned decisionmaking." *Fred Meyer*, 865 F.3d at 638; *see* 5 U.S.C. § 706(2)(A).

## CONCLUSION

The cursory policy statement that the FLRA issued to justify its choice to abandon thirty-five years of precedent promoting and applying the de minimis standard and to adopt the previously rejected substantial-impact test is arbitrary and capricious for the reasons explained above. Consequently, the unions' petitions for review are granted and the FLRA's September 30, 2020 general statement of policy is vacated.

*So ordered*.